Maurice Bower Saul and E. Adele Saul, Husband and Wife v. Commissioner.
Saul v. Commissioner
Docket No. 7679.
United States Tax Court
1947 Tax Ct. Memo LEXIS 164; 6 T.C.M. (CCH) 734; T.C.M. (RIA) 47178; June 26, 1947
*164 Petitioner owned 7,500 shares or 50 per cent of the stock of a corporation which cost him $50 per share about 1924. In 1940 he sold 2,000 shares and, in 1941, 1,000 shares, to the sons-in-law of his brother. Petitioner's brother gave his daughters the funds used for the purchases. The sales were made for $3 per share in 1940 and $6 per share in 1941. On the facts, held, the sales were bona fide and the realized losses deductible. Petitioners maintained agency accounts with a bank which held their securities, collected interest, dividends, rents, and commissions, deducted commissions for services and certain expenses and deposited the net proceeds to petitioners' bank account. Held, the commissions paid the bank are deductible under section 23 (a) (2) I.R.C., as amended. Bingham Trust v. Commissioner, 325 U.S. 365, affirming 2 T.C. 853. C. Walter Randall, Jr., Esq., 2301-17 Packard Bldg., Philadelphia 2, Pa., for the petitioners. William D. Harris, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: The respondent determined deficiencies in income tax for the taxable years 1940 and 1941 in the amounts of $15,515.81 and $6,192.89, respectively. The petitioners allege that *166 the respondent erred in disallowing deductions taken as to each year for net long-term capital losses sustained upon sales of certain stock and in disallowing a deduction taken as to 1940 for commissions paid for the collection of taxable income. Findings of Fact The petitioners are husband and wife. They filed joint income tax returns for the years 1940 and 1941 with the collector of internal revenue at Philadelphia, Pennsylvania. In the return for 1940 a deduction was taken for a long-term capital loss of $47,017.50, being 50 per cent of the loss said to have been sustained upon the transfer of stock of the Fifteenth & Chestnut Realty Company. In the return for 1941 a deduction was taken for a long-term capital loss of $22,000, being 50 per cent of the loss said to have been sustained upon the transfer of additional shares of stock of the same company. In the return for 1940 a deduction in the amount of $520.07 was taken for commissions paid the Pennsylvania Company for Insurances on Lives and Granting Annuities for handling the personal accounts of the petitioners, keeping their securities and recording the receipts and disbursements in connection therewith. In 1924, Maurice *167 Bower Saul, hereinafter for convenience referred to as the petitioner, and Samuel Clement, Jr., were owners of the Fifteenth & Chestnut Realty Company, a corporation, hereinafter referred to as the corporation, each owning 7,500 shares of stock for which each paid $50 per share. The corporation owned and operated the Packard Building at 15th and Chestnut Streets, in Philadelphia. The petitioner and Clement agreed that each was to receive a salary from the corporation and that if either died, his estate was to receive the same amount that the survivor received as salary. The petitioner received from the corporation a salary of $20,500 in 1940 and $15,750 in 1941. The estate of Samuel Clement, Jr., received $19,500 in 1940 and $14,500 in 1941. No dividend as such was paid upon the corporation's stock in 1940 or 1941. The petitioner is a lawyer and is a partner in a law firm in which his brother, Walter Saul, is also a partner. They have been engaged in the practice of law as partners since 1922 and including the taxable years 1940 and 1941. Each was well acquainted with the business and professional affairs of the other. The petitioner devotes and has devoted practically all his time *168 to the practice of his profession. His investment in the stock of the corporation was made in the hope of realizing a profit from its operations. In December 1940 the petitioners' stock was held by the Pennsylvania Company for Insurances on Lives and Granting Annuities as collateral security against a loan. The petitioner put up other collateral of the value of $25,000 and the Company released the shares. The petitioner asked the vice-president of the Pennsylvania Company and the head statistician to make an analysis of the stock and to advise the petitioner as to its value. In November 1940 the vice-president of the company gave his opinion that the value was $3 per share. In 1940 Walter Saul was advised by the petitioner that the latter desired to sell some of his stock in the corporation. Walter Saul was the father of three married daughters as well as three other children. The husbands of the three married daughters were William S. Knox, Frederick A. Van Denbergh, Jr., and Robert Shelly. Walter Saul advised his sons-in-law in 1940 that some of the stock of the corporation was going to be sold by the petitioner, that he thought the stock had a future, and suggested that if *169 they wanted to buy some of the stock they might be able to get the money from their wives to do so. Walter Saul, in 1940, gave $1,500 to Mrs. Robert Shelly, $1,500 to Mrs. William S. Knox, and $3,000 to Mrs. Frederick A. Van Denbergh, Jr., his daughters, who deposited the funds in joint accounts with their husbands. The husbands, sons-in-law of Walter Saul, drew on these accounts and bought the stock from petitioner at $3 per share, Robert Shelly and William S. Knox buying 500 shares each, and Frederick A. Van Denbergh, Jr., buying 1,000 shares. In 1941 the petitioner again requested the vice-president of the Pennsylvania Company for an estimate of the value of the corporation's stock and in December 1941 was advised that in that officer's opinion the stock had a value of $6 per share. In 1941 Walter Saul gave $3,000 each to his daughters, Mrs. Frederick A. Van Denbergh, Jr., and Mrs. William S. Knox, who deposited the money in joint accounts with their husbands. Their husbands drew on these accounts and with the money each acquired 500 shares of the stock in the Realty Company from petitioner at $6 per share. These sales in 1940 and 1941 were made by the petitioner in good *170 faith and for what he believed was a fair consideration. In connection with these transfers the petitioner in 1940 paid $25 for Federal stamps which were used in the sale of the stock and $10 for Pennsylvania stock transfer tax and in 1941 paid $12.50 for Federal stamps and $5 for Pennsylvania transfer tax. During the year 1940, Maurice Saul and E. Adele Scott Saul paid $520.07 in commissions to the Pennsylvania Company for Insurances on Lives and Granting Annuities for handling the personal accounts of the petitioners. The Company kept the petitioners' securities in its possession and recorded receipts and disbursements. Opinion The petitioner claimed deductions for long-term capital losses arising from the sale of stock of the Fifteenth and Chestnut Realty Company in 1940 and 1941. In the notice of deficiency the respondent disallowed these deductions on the ground that no loss was sustained during the taxable years as a result of these transactions. The evidence shows that the petitioner owned 7,500 shares, or 50 per cent of the stock of the Company which he had acquired at a cost of $50 per share in or prior to 1924, that he sold to the sons-in-law of his brother 2,000 *171 shares at $3 per share in December 1940 and 1,000 shares at $6 per share in December 1941, that the petitioner's brother, Walter Saul, gave his daughters $6,000 in each of the years and that the daughters in turn made these funds available to their husbands. The respondent says that under these circumstances the effect is the same as though the petitioner's brother had bought the stock from the petitioner and had given it to his daughters' husbands. The respondent contends that the parties may not accomplish by indirection the same result and thereby create a deductible loss for the petitioner when the loss on a direct sale to Walter Saul would not be deductible, in view of section 24(b) of the Internal Revenue Code. [1]
*172 We cannot agree with the respondent that the sale was in effect a sale to the petitioner's brother. There is no showing that the purchasers did not acquire full title or that they held the stock for the benefit of Walter Saul. If the result intended by all the parties was to place the stock in the hands of the sons-in-law of the petitioner's brother the parties had the right to choose the method actually adopted, a gift of the funds by Walter Saul to his daughters followed by the purchase of the stock by their husbands, in preference to the alternative method of a purchase by Walter Saul of the stock followed by a gift of the stock. This is not a case of doing indirectly what the parties cannot, without foregoing the deduction, do directly, but merely a choice between two alternative methods of accomplishing the same end. That they choose the method which results in a tax saving is their privilege. There is nothing inherently wrong in such a choice. Commissioner v. Behan, 90 Fed. (2d) 609; Shoenberg v. Commissioner, 77 Fed. (2d) 446; Theron E. Catlin, et al., 25 B.T.A. 834; A. W. Mellon, 36 B.T.A. 977; Anna M. Harkness, 1 B.T.A. 127. *173 The respondent contends further that the sales were not bona fide, in that they were not for the fair market value of the stock or for a reasonable price which might be agreed upon between a willing buyer and a willing seller. The respondent computes the book value from the balance sheets at $51.83 per share at the beginning of 1940, $48.54 at the end of that year, and $47.52 at the end of 1941, and says that the sales prices of $3 and $6 per share are so inadequate that the sales could not be bona fide. It is immaterial whether the motive prompting the sale is to secure a deduction, so long as the sale is bona fide and fair value is paid. A. W. Mellon, supra; Commissioner v. Hale, 67 Fed. (2d) 561. The petitioner had pledged his stock with the Pennsylvania Company for Insurances on Lives and Granting Annuities as security for a loan. When he contemplated selling, he asked an officer of that company to make an appraisal of the stock and advise him of its value. This officer in November 1940 appraised the stock at $3 per share. The petitioner secured the release *174 of his stock by putting up other collateral of the value of $25,000, and offered part of the stock at the appraised price to his brother's sons-in-law. He testified that he thought the stock was worth no more than this price, and that he had had another offer for the stock but the offeror was not willing to pay as much as $3 per share. The action of the bank in releasing the stock upon the substitution of other collateral of the value of $25,000 would indicate that the bank considered the stock worth no more than that sum, or $3.33 per share. The following year the petitioner again asked for an appraisal and, upon receiving an estimate of $6 a share, used the appraised price in offering more of the stock to some of the same purchasers. Two of the purchasers testified that they bought the stock as an investment, that they had not since transferred it, that there was no reservation or understanding that title was to be held for the benefit of the petitioner or his brother, and that they did not consider they were receiving any gift from the petitioner. The petitioner, before selling, sought advice as to value from an impartial source. He fixed the selling price at the amount suggested. *175 We think the petitioner sold the stock for what he believed was its approximate value and that the transfers were absolute and unconditional. The fact that the book value of the stock may be greatly in excess of these selling prices does not convince us that the transactions were not bona fide and for value. "As is well known, book values assigned to corporate assets are often arbitrary, and their general unreliability is everywhere recognized." Spreckels-Rosekrans Inv. Co. v. Lewis, 146 Fed. (2d) 982. See also Oertel v. Glenn, 13 Fed. Supp. 651, affd., 97 Fed. (2d) 495. Considering all the facts and circumstances disclosed by the record we think the petitioner made bona fide sales of capital assets to the purchasers of the stock, that he realized losses thereon and that he is entitled to deductions for long-term capital losses resulting from these sales, measured by the differences between the cost of $50 per share and the selling prices of $3 or $6 per share. The petitioner paid $35 in 1940 and $17.50 in 1941 as Federal stamp taxes and Pennsylvania stock transfer taxes in connection with these transfers. He added the amount to cost in *176 computing the loss for 1940 and omitted to claim any benefit of the payments made in 1941. These amounts should have been deducted as taxes paid in the respective years. Section 19.23(c)-2, Reg. 103. They may not properly be treated as increasing the cost or decreasing the selling price in computing gain or loss upon the transactions. See Central Real Estate Co. v. Commissioner, 47 Fed. (2d) 1036. The petitioner made no claim for deduction of these amounts as taxes paid in the returns or in the petition. The question of their allowance as deductions is therefore not before us. The respondent disallowed a deduction for 1940 of $550.07 claimed for commissions paid and cost of preparing income tax returns. The petition contests the disallowance of $520.07 of this amount paid as commissions for the collection of taxable income. Section 23(a)(2) of the Code, as amended by section 121 of the Revenue Act of 1942, allows the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, *177 conservation, or maintenance of property held for the production of income." Subsection (e) of such section 121 made the amendment retroactively applicable to the taxable year before us. Both petitioners maintained agency accounts with the Pennsylvania Company for Insurance on Lives and Granting Annuities which kept their securities, collected interest, dividends, rents and commissions, and recorded receipts and disbursements in connection therewith. None of the income was exempt from income tax. The Company charged commissions for its services as agent. The respondent's contention is that the expenses were incurred for the convenience of the petitioners and were not necessary expenses. The decision of the Supreme Court in Bingham Trust v. Commissioner, 325 U.S. 365, affirming 2 T.C. 853, disposes of this question in favor of the petitioners. These commissions are deductible as claimed. See also Edward Mallinckrodt, Jr., 2 T.C. 1128, affd., 146 Fed. (2d) 1, cert. denied, 324 U.S. 871; and William Heyman, 6 T.C. 799. Decision will be entered under Rule 50. Footnotes
1. SEC. 24. ITEMS NOT DEDUCTIBLE. * * *
(b) Losses from Sales or Exchanges of Property - (1) Losses Disallowed. - In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly - (A) Between members of a family, as defined in paragraph (2) (D); * * * (2) Stock Ownership, Family, and Partnership Rule - For the purposes of determining, in applying paragraph (1), the ownership of stock - (D) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; * * *↩