MAY HOSIERY MILLS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 99006.   Promulgated August 29, 1940.

*Theodore B. Benson, Esq.*, for the petitioner.
*L. W. Creason, Esq.*, for the respondent.

648

OPINION.

ARUNDELL: The petitioner seeks redetermination of the deficiency here in question on three different bases, each involving a different aspect of the same transaction. The first two stem from the requirement that 15 percent of the petitioner's net income annually be set aside in a sinking fund and applied to the purchase or redemption of its preference stock. Petitioner argues that this provision of the agreement of August 19, 1927, brings within section 26 (c) (2) of the Revenue Act of 1936 [1] (1) the amount of $51,189.68 which was required during the taxable year to be set aside in the sinking fund, or (2) the amount of $49,165.51 which petitioner spent in the purchase of its

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\* \* \* \* \* \*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

\* \* \ \* \* \* \* \*

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of a taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

stock, thus entitling petitioner to a credit in one of those sums. We think petitioner may not claim a credit in either of these amounts. The statute provides a credit only when the amounts so set aside or expended are for the "discharge of a debt" and neither the sinking fund nor the expenditures in the instant case may be so characterized. The shares of stock retired plainly represented capital interest and not indebtedness. They had no fixed date of maturity, see *United States* v. *South Georgia Railway Co.*, 107 Fed. (2d) 3. Cf. *Commissioner* v. *Holding Corporation*, 76 Fed. (2d) 11; *Palmer*, *Stacy-Merrill*, *Inc.*, 39 B. T. A. 636; affd., 111 Fed. (2d) 809. The principal amounts and dividends were made payable only out of net profits, see *Haffenreffer Brewing Co.*, 41 B. T. A. 443. The obligation imposed by contract on the petitioner to set aside and apply a percentage of its profits to the retirement of its stock does not alter the nature ▪of the transaction. The significant characteristic of a debt certain—that its payment may be forced in case of default, see *United States* v. *South Georgia Railway Co.*, *supra*—is here lacking. At least the two elements of the contingency of the profits from which payment was to be made and the absence of a maturity date for the shares retired brand the stock here a capital interest for the redemption or retirement of which no credit may be claimed under section 26 (c) (2) of the Revenue Act of 1936.

Moreover, for an additional reason in the present case the petitioner may not claim a credit for the $51,189.68 which was required to be set aside during the taxable year in the sinking fund for the redemption of preference stock. It is not enough that this amount was required to be irrevocably set aside; the credit is allowed only to the extent that the required amount is actually set aside. In the present case no evidence has been presented that the required $51,189.68 was so set aside and in face of this lack of evidence we are unable to hold that petitioner is entitled to a credit in that amount.

The third position taken by the petitioner is that the payment of $49,165.51 made to its stockholders was in fact a distribution in liquidation, $37,468.44 of which represents profits accumulated since February 28, 1913, for which petitioner is entitled to a dividends-paid credit under section 27 (f) of the Revenue Act of 1936.[2] Against this contention of the petitioner, the respondent argues that the sum paid out may not by its nature be considered a distribu-

---

[2] SEC. 27. CORPORATION CREDIT FOR DIVIDENDS PAID.

\* \* \* \* \*

(f) DISTRIBUTIONS IN LIQUIDATION.—In the case of amounts distributed in liquidation the part of such distribution which is properly chargeable to the earnings or profits accumulated after February 28, 1913, shall, for the purposes of computing the dividends-paid credit under this section, be treated as a taxable dividend paid.

(g) PREFERENTIAL DIVIDENDS.—No dividends-paid credit shall be allowed with respect to any distribution unless the distribution is pro rata, equal in amount, and with no preference to any share of stock as compared with other shares of the same class.

tion in liquidation and entitles petitioner to no credit under section 27, *supra*, even if labeled a liquidating distribution, since it was not made *pro rata* or without preference among shares of the same class, as required by section 27 (g). Petitioner contends, however, that subsection (g) may not be applied to distributions in liquidation in the absence of specific provision to that effect, since such distributions are granted the credit in question by singular language in subsection (f). We do not think petitioner can succeed in this argument. By its very terms section 27 (g) applies to "any distribution" and, following as it does subsection (f), must, we think, be applied to liquidating distributions. This interpretation is in keeping with the ruling of the Commissioner in I. T. 3244 (C. B. 1939–1), which by its terms covers the exact situation presented here. The facts are accurately reflected by the headnote:

The M Company is not entitled to a dividends-paid credit with respect to liquidating distributions made in acquiring a part of its outstanding preference shares at different prices by direct purchases from stockholders and by purchases on the R stock exchange.

The reason for this holding is assigned to the "fact that the purchase of preference shares for cancellation and retirement was not on a pro rata basis and that every shareholder of the class did not receive (in proportion to the number of shares held by him) his pro rata part of the distribution" and, therefore, "it is held that the M Company is not entitled to a dividends-paid credit for any portion of the distribution in partial liquidation by reason of the limitation imposed by section 27 (g) of the Act."

With this interpretation of the statute we are in agreement. It plainly appears in the instant case that the purchase of the shares was made unequally among the holders of preference stock. We are not shown the prices at which individual shares were purchased. It is sufficient that they were bought from only a portion of the holders of preference stock.

There is no merit in petitioner's argument that the stockholders to whom the distribution was made constituted a separate class by virtue of the fact that their stock was purchased for retirement and that section 27 (g) is thus satisfied. It seems plain that all of the preference shares issued were of the same character, with identical provisions. The purchase of preference stock by the issuing corporation does not alter this character, however much retirement and cancellation may by destroying it take the stock out of the class. See *Black Motor Co.*, 41 B. T. A. 300.

In view of our conclusion it is unnecessary to pass on the additional contention of the respondent that the $49,165.51 was not paid out as a liquidating distribution.

*Decision will be entered for respondent.*