Union Sugar Company v. Commissioner.
Union Sugar Co. v. Commissioner
Docket No. 106845.
United States Tax Court
1942 Tax Ct. Memo LEXIS 66; 1 T.C.M. (CCH) 159; T.C.M. (RIA) 42643; November 30, 1942
*66 C. N. Whitehead, C.P.A., 444 California St., San Francisco, Calif., for the petitioner. John H. Pigg, Esq., for the respondent. ARNOLD Memorandum Opinion ARNOLD, J.: This proceeding involves deficiencies in income taxes for 1936 and 1937 in the respective amounts of $671.92 and $1,265.19. The sole issue is whether the dividends paid credit allowed by respondent for 1936 and 1937 should be increased by $9,598.89 and $5,750.83, respectively. The facts were stipulated, and as stipulated, are adopted as our findings of fact. Only the more pertinent facts will be hereinafter related. [The Facts] Petitioner is a California corporation with its principal office and place of business in San Francisco. Its returns for the calendar years 1936 and 1937 were made to the collector for the first district of California. As of January 1, 1936, petitioner's authorized capital stock was 40,000 shares of 7 percent cumulative preferred, aggregate par value $1,000,000, and 160,000 shares of common stock, aggregate par value $4,000,000. The capital stock outstanding as of January 1, 1936, was 16,000 of preferred and 100,375 shares of common. No dividends had been paid on the preferred stock since *67 May 10, 1931, with the result that dividends thereon were in arrears to the extent of $9.63 per share. Prior to August 25, 1936, petitioner's articles of incorporation provided by Article 6 thereof that "preferred stock may at the option of the holders thereof be converted into common stock share for share." On August 25, 1936, petitioner's articles of incorporation were duly amended so that "preferred stock may at the option of the holders thereof be converted into common stock, one share of preferred stock for one and one-half shares of common stock." Before and after its amendment Article 6 provided for the redemption of preferred stock in whole or in part at $26.00 per share and all accumulated dividends thereon. At a directors' meeting held on August 25, 1936, petitioner's board of directors adopted the following resolutions: * * * * *
BE IT RESOLVED that subject to the qualifications before the California State Corporation Commissioner and before the Federal Securities Exchange Commission. the corporation proceed to convert its preferred stock into common stock, one share of preferred stock for one and one-half shares of common stock, and in the event all of the 24,000 *68 shares of common stock so required to convert the present 16,000 shares of issued preferred are not used in such conversion by November 10th, 1936, that the officers of this corporation be and they are hereby authorized and directed to sell the shares remaining out of said 24,000 at the price of $23.76 per share to common stockholders of record at the close of business September 1st, 1936, and to use the proceeds thereof in the reimbursement to the corporation of any funds used in redemption of the shares of said preferred stock; and that notice of redemption of said preferred stock be published once a week for at least sixty days in The Wall Street Journal, a newspaper published in San Francisco, California. AND BE IT FURTHER RESOLVED, and the Board of Directors does hereby determine that such shares of common stock can not be sold at par; AND BE IT FURTHER RESOLVED, and the Board of Directors does hereby determine that the fair market value to the corporation in monetary terms of the preferred stock outstanding is $35.63 per share as of November 10, 1936. Under date of August 28, 1936, petitioner's president addressed a letter to all of its preferred and common stockholders, which *69 reads as follows: "At a meeting of the Board of Directors of the Company held on August 25th, 1936, a resolution was adopted amending Article Sixth of the Articles of Incorporation giving the preferred stockholders, at their option, a right to convert their preferred stock and accumulated dividends since May 10th, 1931 at the rate of 7% per annum, into common stock, one share of preferred stock and accumulated dividends for one and one-half shares of common stock. "Before the proposed amendment, the Articles provided that the preferred stockholders had an option to exchange one share of preferred stock for one share of common stock. This amendment must be approved and consented to by the stockholders of record at the close of business on September 1st, 1936 of at least two-thirds of the outstanding shares of each class. We enclose herewith a form for such written consent, and would request that you immediately sign same, date, fill in the number and class of shares, and return to the Union Sugar Company in the enclosed stamped envelope. "After registration with the Federal Securities Exchange Commission and after approval by the State Corporation Commissioner, it is the plan of *70 the Company to retire its preferred stock outstanding, through the conversion right granted by the Articles as amended, or through redemption for cash on November 10th, 1936, at $26.00 per share plus unpaid accumulated dividends. Twentyfour Thousand shares of common stock will be required to be issued for this purpose. Sixteen thousand shares of preferred stock are now outstanding. "The plan further, is that in event that the holders of the entire issue of the preferred stock do not avail themselves of the privilege of converting one share of preferred for one and one-half shares of common stock prior to November 10th, 1936, the Company proposes to offer for sale, after registration with the Federal Securities Exchange Commission, and subject to consent of the California State Corporation Commissioner, 24,000 shares of common stock, or such part thereof as has not been exchanged on the above basis for preferred stock, to the common stockholders of record at the close of business on September 1st, 1936, at $23.76 per share. "In the event the subscriptions received exceed the total number of shares of common stock available for subscription, then, in that event, subscriptions shall *71 be filled in proportion to the subscriber's holdings. "It is also planned that the proceeds from the sale of this stock shall be used exclusively in redemption of the preferred stock not converted. "This letter does not constitute an offer to sell or an attempt or offer to dispose or solicitation of an offer to buy. "When the required legal steps have been completed preferred stockholders will receive consent forms for the exercise of their conversion privileges and common stockholders as of record at the close of business on September 1, 1936, will receive subscription blanks. "In order that this plan may proceed without delay we strongly urge you to immediately sign and return the enclosed consent. "By order of the Board of Directors. "EDMUND LYMAN, President." The above described plan was duly approved by petitioner's stockholders, the Federal Securities and Exchange Commission, and the Corporation Commissioner of the State of California. Petitioner's stock books were closed for the purpose of conversion on November 10, 1936. On, or as of the latter date, the holders of 14,097 shares of preferred stock surrendered that stock in exchange for 21,145 1/2 shares of common *72 stock. The holders of the remaining 1,903 shares of preferred did not elect to convert under the plan as stated, with the result that on or as of November 10, 1936, said 1,903 shares of preferred stock were made subject to redemption and subscription commitments for the 2,854 1/2 shares of common stock, not used in the conversion, were apportioned to the subscribers of the common stock. Of the aforesaid 1,903 shares of preferred subject to redemption, the holders of 903 shares surrendered their stock and received cash in 1936 in the aggregate amount of $32,173.89, of which the sum of $9,598.89 represented the portion thereof attributable to the dividend arrears of $9.63 per share and the premium of $1.00 per share. In 1937 the holders of 541 shares surrendered their stock and received cash in the aggregate amount of $19,275.83, of which $5,750.83, represented dividend arrears of $9.63 per share and premium of $1.00 per share. The holders of the remaining 459 shares of preferred had not surrendered their stock for redemption and cancellation prior to the close of 1937. Petitioner's surplus and undivided profits, as disclosed by its returns for 1936 and 1937, were as follows: Surplus and
Undivided
Profits
Deficit
Jan. 1, 1936
$122,000.51
Dec. 31, 1936
16,036.05
Dec. 31, 1937
$55,818.36
*73 In its returns for 1936 and 1937 petitioner claimed dividends paid credits in the respective amounts of $211,419.06 and $61,654.25, which amounts were computed, as shown on said returns, as follows: 1936
1937
Net income for surtax
computation
$245,995.06
$71,158.46
Less: Normal tax
34,576.00
9,504.21
Adjusted net income
$211,419.06
$61,654.25
Less: Dividends paid
credit
211,419.06
61,654.25
Undistributed net in-
come
None
None
In determining the deficiencies herein respondent allowed dividends paid credits for 1936 and 1937 to the extent of $184,084.50 and $30,672, respectively, representing the amounts of cash dividends declared and paid by petitioner on its common stock during said years. He disallowed dividends paid credits claimed by petitioner for 1936 and 1937 in the amounts of $27,334.56 respectively. The amounts disallowed included the $9,598.89 for 1936 and the $5,750.83 for 1937 hereinbefore mentioned. No dividends in cash or stock were declared on petitioner's preferred stock in either of the taxable years 1936 and 1937. [Opinion] Upon the foregoing facts petitioner contends that redemption of its preferred stock constituted a partial *74 liquidation as defined by sections 115 (c) and 27 (f), Revenue Act of 1936, that under section 27 (f) it is entitled to a dividends paid credit for the portion of the partial distribution properly chargeable to earnings and profits, that the redemption was not preferential within the meaning of section 27 (g) of the 1936 Act, and that being a partial liquidation gain or loss is recognized for tax purposes and section 27 (h) of the 1936 Act is inapplicable. Petitioner cites and relies primarily upon , and . Respondent contends that the petitioner is not entitled to a larger dividends paid credit because it is not established by the evidence that the cash payments were taxable dividends in the hands of the preferred shareholders to whom such payments were made. In other words, respondent says that petitioner has failed to prove that $9,598.89 of the $32,173.89 cash paid to preferred stockholders in 1936 and $5,750.83 of the $19,275.83 cash paid to preferred stockholders in 1937, constituted a distribution in liquidation within the meaning of section 27 (f) so *75 as to entitle petitioner to the credit provided therein. Respondent cites, among other cases, ;; ; and , affirming . Section 27 (f) of the Revenue Act of 1936, set forth in the margin, [1] provides for a dividends paid credit for that part of a distribution in liquidation which is properly chargeable to earnings or profits accumulated after February 28, 1913. Distributions in complete liquidation of a corporation are treated under the statute "as in full payment in exchange for the stock", and amounts distributed in partial liquidation of a corporation are treated "as in part or full payment in exchange for the stock." Section 115 (c), Revenue Act of 1936. Partial liquidation is defined by section 115 (i) as "a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in *76 complete cancellation or redemption of all or a portion of its stock." We think the facts herein establish a partial liquidation of petitioner's capital stock. Henry Irvine, supra;. Under the plan presented by petitioner to its preferred and common stockholders all of its preferred stock was to be converted to common or redeemed for cash. Preferred stockholders could retain their investment in the business by exchanging their stock for common, or they could liquidate their investment at par, plus the $1.00 a share premium, plus the accumulated dividends on each preferred share amounting to $9.63 a share. Most of the preferred stock was converted into common, but the holders of 1,903 shares elected not to *77 convert. The holders of these 1,903 shares knew that their shares would be redeemed under the plan and the holders of 903 shares surrendered their stock for cash in 1936 and the holders of 541 shares surrendered their stock for cash in 1937. Obviously, all preferred stockholders were afforded the same opportunity and were treated equally. No preference was shown one stockholder over another stockholder so as to preclude the credit under section 27(g), Revenue Act of 1936. The present situation is, therefore, clearly distinguishable from , and , affirming , where preferences existed which defeated the credit. To the extent that the preferred stock was redeemed in cash there was a distribution in liquidation. ; and to the extent that this distribution was from earnings and profits there was a taxable dividend under section 27 (f). . *78 The last cited case, like the present proceeding, involved a distribution in liquidation, and the Supreme Court had for consideration the question of whether the taxpayer was entitled to a dividends paid credit under section 27, Revenue Act of 1936. In speaking of the credit provided by section 27 (f), supra, the Supreme Court stated - 1. Although a distribution in liquidation of earnings which accrued subsequently to February 28, 1913, does not constitute a dividend in the proper sense of the term, [6] subsection (f) categorically declares that a liquidating distribution, to the extent it is composed of such earnings, shall, for the purposes of computing the dividends-paid credit "be treated as a taxable dividend paid." Plainly the section intends that a distribution of such earnings shall be considered a dividend. Further it provides that the distributing corporation may use the amount in computing its credit for dividends paid. And, to put the matter beyond cavil, the section also says that the distribution shall be treated as the payment to the distributee of a taxable dividend. $ Later in the *79 course of its opinion the Court stated "the phrase [properly chargeable to the earnings or profits accumulated after February 28, 1913] finds its proper office in limiting the amount of the distribution in liquidation which may be considered a dividend from earnings or profits as distinguished from one composed of capital." Here there is no question presented as to the availability of earnings or profits accumulated after February 28, 1913. It was stated at the hearing, without objection, that it "is stipulated that there were earnings and profits available for such a charge." The respondent's argument throughout has been that the evidence did not establish that the cash payments were taxable dividends in the hands of the preferred shareholders. He does not question the availability of earnings and profits. This argument is effectively disposed of by the above quotation from the Supreme Court's opinion. Under the plan adopted by this petitioner to retire and cancel all its outstanding preferred stock, each preferred shareholder who elected to have his stock redeemed received $35.63 per share. Of this amount $25.00 was a return of capital and properly chargeable to capital account. *80 The balance of $10.63 was properly chargeable to petitioner's earnings or profits. In the shareholder's hands this $10.63 distribution "shall be treated as the payment to the distributee of a taxable dividend", As to the corporation this portion of the distribution shall for the purposes of computing the dividends paid credit under section (f) be treated as a taxable dividend paid. Petitioner is entitled to have the dividends paid credits allowed by respondent for 1936 and 1937 increased by the respective amounts of $9,598.89 and $5,750.83. ; and , where the Commissioner conceded error as to preferred dividend arrears on 79 shares of stock and allowed dividends paid credit for cash payment of arrears at $45.50 per share. The , relied on by respondent, is distinguishable because the stock there was redeemed at par, and the entire amount of the liquidating distribution was allocable to the taxpayer's capital *81 account. Here the premium payment and the unpaid cumulative dividends are properly chargeable to earnings and profits, and the portion used to redeem the preferred at par is chargeable to petitioner's capital account. The Humphryes Manufacturing Co. case, supra, involved a credit under section 27 (e), it did not involve a partial liquidation, and a dividends paid credit for cash paid for fractional shares was denied because of a failure of proof. Here, the statute, section 27 (f), "categorically declares" that a liquidating distribution to the extent of earnings shall be treated as a taxable dividend paid for the purposes of computing the dividends paid credit. Since respondent made other adjustments in determining the deficiencies, Decision will be entered under Rule 50. Footnotes
1. SEC. 27. CORPORATION CREDIT FOR DIVIDENDS PAID * * * * *
(f) Distributions in Liquidation. - In the case of amounts distributed in liquidation the part of such distribution which is properly chargeable to the earnings or profits accumulated after February 28, 1913, shall, for the purposes of computing the dividends paid credit under this section, be treated as a taxable dividend paid.↩
6. .↩