**NEW YORK STOCKS, Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

No. 21, Docket 20637.

Circuit Court of Appeals, Second Circuit.

Nov. 5, 1947.

---

[4] "Is," appearing at this point in the original, seems clearly a mistake.

[5] See references in note 3, supra.

Harris Berlack, of New York City (Carlos L. Israels, of New York City, on the brief), for petitioner.

Newton K. Fox, Sp. Asst. to Atty. Gen. (Theron L. Caudle, Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

Petitioner, an "open-end" investment company, offers shares of its stock for sale and invests the proceeds therefrom in securities. Its stock is issued in 21 series, each designated by the name of a different industry. As shares are sold the proceeds are invested in securities of those companies engaged in the industry indicated by the name of the series, and the shareholder participates only in assets derived from the series in which he holds a share of special stock.

Petitioner's charter provides that any holder of special stock may, at his option, offer it to the petitioner for redemption on any day on which the New York Stock Exchange is opened for business. Special stock is redeemed at a figure equal to the shareholder's proportionate interest in the "net asset value" of the series, less a small redemption charge. Included within the "net asset value" of any series is the income accrued thereon during the taxable year. The net asset value is determined as of the date of redemption elected by the shareholder, and petitioner is obligated to pay the net amount payable on such redemption within three days after the determination thereof.[1] The usual procedure is for the holder who elects to redeem to act through an investment broker who handles the transaction for the shareholder with the petitioner. It is this feature of a standing offer to redeem which distinguishes the "open-end" company.[2]

[1] Of the relevant portions of petitioner's charter, parag. (2) defines "net asset value" of a series of the petitioner's special stock at any point of time as in substance the excess over liabilities of all the assets, including cash, amounts receivable for shares sold but not issued, income receivable from the underlying securities, and the value of such securities at the market. And parag. (5) provides: "Every registered holder of Special Stock of any series may, during any day on which the New York Stock Exchange shall be open, deliver to the Corporation for redemption a certificate or certificates for Special Stock of any series, properly endorsed, and the Corporation shall thereupon redeem the same out of the underlying assets of such series by paying to such registered holder, in cash, the net asset value thereof determined as provided in paragraph (2) hereof, less an amount approximately equal to the average out-of-pocket expenses incurred by the Corporation in connection with similar redemptions—which amount shall be fixed by the Corporation from time to time." It states further that the Corporation shall apply an amount out of its capital equal to the aggregate par value of the shares so redeemed, that the redemption amount shall be paid within three days after its determination, and that the average out-of-pocket expenses shall not exceed 1% of the net asset value of the redeemed shares.

[2] Compare definition in the Investment Company Act of 1940, 15 U.S.C.A. § 80a—5(a) (1); also Revenue Act of 1938, § 361(a) (5), 26 U.S.C.A. Int.Rev.Code, § 361, quoted in note 3, infra.

The stipulated facts here show that petitioner's net income for the fiscal year ending May 31, 1940, was $293,935.86; and during that period it distributed at the regular semiannual dividend periods an aggregate of $256,568.53. The Commissioner allowed a basic surtax credit for such dividends paid. In the same period it paid an aggregate sum of $5,717,989.76 in the redemption of 774,687 shares of special stock. Of this sum, $40,932.69 represented the proportionate share of accumulated net income paid upon the redemption of the stock. Thus petitioner had fully distributed all its current earnings for the taxable year. The question here presented is only as to the taxability as income to it under the 1938 Act of the $40,932.69 earnings distributed on redemption of the stock, it being conceded that petitioner receives credit as a deduction for the regular dividends paid during the taxable year. Respondent Commissioner denied the further credit claimed and assessed a deficiency tax of $6,165.61. This the Tax Court sustained on the taxpayer's petition to it, a majority holding the payment not deductible, as being a preferential dividend and thus excluded under § 27(h) of the 1938 Act, 26 U.S.C.A.Int.Rev.Code, § 27(h), while two judges filed a dissenting opinion. 8 T.C. 322. On this petition for review the question at issue is therefore whether or not this payment constituted a preferential dividend.

The background of the problem is found in the change in corporate taxation inaugurated in the 1936 Act. At this time, in order to avoid income accumulation by corporations, Congress enacted a drastic surtax upon undistributed income, § 14, 26 U.S.C.A.Int.Rev.Acts, page 823, but allowed the corporation credit for dividends paid to its shareholders, § 27, 26 U.S.C.A. Int.Rev.Acts, page 837. In the then subd. (g), which became (h) of the 1938 Act, it excluded from such credit dividends which were not fairly distributed among all of a class of shareholders, but gave some a preference in the distribution. Later acts made some changes in this general plan of corporate taxation, so that the applicability of § 27, I.R.C., 26 U.S. C.A.Int.Rev.Code, § 27, is now restricted to certain types of corporation, one of which was the "mutual investment company" (the "regulated investment company" of the 1942 and later Acts). Since such a company was more a conduit for investment by small investors than an ordinary business corporation operated for profit, it was given special treatment, including not only the basic surtax credit of § 27(b) for dividends distributed, but also the favor of a flat tax on its taxable income. Act 1938, §§ 361, 362, 26 U.S.C.A. Int.Rev.Code, §§ 361, 362. Respondent concedes that petitioner satisfied the requirements of § 361 as such a company, including the provision of subd. (a) (4) that it must distribute at least 90 per centum of its net income to its shareholders as taxable dividends during the taxable year, including herein the earnings paid out on redemption of stock, as expressly provided in U. S. Treas. Reg. 103, § 19.361-2(c).[3] Respondent justified this inconsistent treatment of these earnings as constituting dividends to satisfy § 361, but not to satisfy § 27(b) as being required by the terms of the statute. We must turn, therefore, to the definition of "preferential dividends" to see if they are thus excluded.

Under § 27(h), the amount distributed as dividends is not to be so considered for the purpose of computing the basic surtax credit of § 27(b) "unless such distribution is pro rata, with no preference to any share of stock as compared with other shares of the same class, and with no preference to one class of stock as compared with another class except to the extent that the former is entitled (without reference to waivers of their rights by shareholders) to such preference." The claim here is of an improper preference within the same class.

In its earlier form as § 27(g) of the

---

[3] Petitioner also meets the requirement of subd. (a) (5), viz.: "Its shareholders are, upon reasonable notice, entitled to redemption of their stock for their proportionate interests in the corporation's properties, or the cash equivalent thereof less a discount not in excess of 3 per centum thereof."

\*    \*    \*    \*    \*    \*    \*

Act of 1936, the statute required the distribution to be not only "pro rata," but "equal in amount." While the change appears to have been made mainly in the interest of clarification, the new statute does tend somewhat the more clearly to include among proper dividends payments such as the one here in question. As a matter of fact, such expression of legislative intention as we have does tend to show that a distribution like this, which is open to all the shareholders "with substantial impartiality," is not a preferential one. Thus the Report of the House Committee on Ways and Means on the 1938 Act, H. R. Rep. No. 1860, 75th Cong., 3d Sess., 23, 1939–1 Cum. Bull. (Part 2) 728, 744, says:

■ "Subsection (h) of the bill, relating to 'preferential dividends,' has the same purpose as section 27(g) of the existing law which disallows a dividends-paid credit for a distribution which is preferential. No dividends-paid credit should be allowed in the case of a distribution not in conformity with the rights of shareholders generally inherent in their stock holdings, whether the preferential distribution reflects an act of injustice to shareholders or a device acquiesced in by shareholders, rigged with a view to tax avoidance. The preference which prevents the allowance of a dividends-paid credit may be one in favor of one class of stock as well as one in favor of some shares of stock within one class. The provision has been expanded in this bill so as to leave no uncertainty as to its purpose in this respect. On the other hand, the words 'equal in amount,' being regarded by the committee as surplusage in existing law and apparently being productive of some confusion, have been eliminated in the new provision in the interest of clarity. *The committee believes that no distribution which treats shareholders with substantial impartiality and in- a manner consistent with their rights under their stock-holding interests, should be regarded as preferential by reason of minor differences in valuations of property distributed."* (Emphasis added.)

This provision has been applied to various corporations in decisions cited by the parties and discussed in the opinions below; but this is the first occasion for its application to an open-end investment company. We think the nature of such a company, defined and given favorable tax treatment under § 361, has not been given due weight below or by the respondent. It offers a means by which the shareholder can presumably obtain expert supervision and diversity in his investment and at the same time retain complete discretion as to when to sell. At the sale of his shares the price is not determined by any capricious value judgment on the part of the petitioner, but rather by the vicissitudes of the market. The shareholder on selling stock of a special series gets his proportionate share of the accrued net income of those companies that make up the series. Thus one who redeems prior to a dividend date will get his pro rata share of the earnings for the period he held his shares, while he who retains his stock gets the earnings over the entire period. This provides an intrinsically fair method for distributing its earnings to all its shareholders, including those who dispose of their stock during the taxable year. Whether to redeem and when to redeem are determinations wholly within the province of each shareholder. Each has equal opportunity to redeem; all are treated with substantial impartiality. Hence we agree with the dissenting judges below that the distribution is not a preferential dividend within the meaning of § 27(h).

The ground taken by the majority was that "there is no plan for redeeming all of the shares of a class of stock, or a proportionate amount from each stockholder, on the same terms and during some definite period." But since petitioner was obligated to take all the shares offered, we do not see why there was not just such a plan. The fact that in all probability redemption would not be required as to all of a series does not change petitioner's obligation, which requires and determines its impartiality to all shareholders. Respondent goes even further in his assertion that a distribution on redemption of stock is preferential "without a simultaneous pro rata distribution to all other shareholders of the same series who do not redeem." Since it is obviously impossible for

petitioner to declare and pay a complete dividend every time stock is offered for redemption—quite possibly every business day in the year—the unreal character of the condition is obvious and it follows that no open-end company can get the benefit of § 27(b). But the statute requires this feature of the business in order that it qualify as a mutual investment company. The argument therefore makes Congress appear in the role of an Indian giver in its special treatment of these companies. As a matter of fact, the more the significant and necessary provision for redemption is exercised, the less the company receives a tax benefit, so that upon a 100 per cent redemption it would have to pay a tax upon all its earnings. Since Congress could so have intended, these strange consequences are not decisive of a contrary intent. More important is the fact that every shareholder receives his fair proportion of the earnings during the period he elects to remain an owner, those redeeming being paid when they redeem, those retaining ownership being paid at the end of petitioner's dividend period. Since the decision to retain or redeem is left to the unfettered judgment of the shareholder, there is no preference and no injustice to any shareholder.

The cases relied upon by respondent do not disclose a like situation. On the other hand they all follow a consistent pattern of special advantages offered certain shareholders and denied others. Thus, in the case most stressed below, May Hosiery Mills v. C. I. R., 42 B. T. A. 646, affirmed 4 Cir., 123 F.2d 858, the corporation was required to set aside 15 per cent of its net earnings as a sinking fund to redeem preferred stock. It purchased such shares in the open market and claimed a dividend because the purchase price had been paid in part from its net earnings. Dividends-paid credit was disallowed on the ground that the payments constituted preferential dividends within § 27(g) of the Revenue Act of 1936. Significantly, while the corporation was obligated to redeem some of its preferred stock, no shareholder had the right to have any of his stock redeemed. There was lacking an equal opportunity upon the part of all to have stock redeemed.

"The payment made for the purchase of the preference stock in the open market, where it is to be conclusively presumed that different prices were paid for the shares purchased, was not a distribution pro rata without preference and does not entitle the petitioner to a credit for dividends paid. All the holders of preference stock could not have had notice of the purchase and there was, therefore, no equal opportunity given them." 123 F.2d 858, 861.

Similarly in Black Motor Co. v. C. I. R., 6 Cir., 125 F.2d 977, affirming 41 B. T. A. 300, the dividend payments made were not in proportion to the percentage owned by each shareholder. There the two principal shareholders received 100 per cent of their pro rata share of the dividends, while one shareholder received only 25 per cent and 16 others received 50 per cent. See also Monte Glove Co. v. C. I. R., 44 B. T. A. 539. And in Safety Convoy Co. v. Thomas, 5 Cir., 139 F.2d 219, 220, the dividends paid to each shareholder were not in proportion to the percentage owned by each at the time the payments were made. Although preference did not appear in the declaration, there was a preference as to the time of payment. Respondent quotes the court's statement that a payment to one shareholder then withheld from another effects a preference "that cannot be eradicated by the subsequent payment of the dividends withheld," adding: "Economic value in the present use of money is the basis of all interest and discount rates; and its substance cannot be overlooked here." But that sound and apt statement in its context can have little application here where there is no true withholding from any one against his will and each receives a fairly determined part of the corporate earnings proportionate to his investment during the period he holds it.

■ We think therefore that congressional favor to these companies, logically and reasonably construed, includes the payments taxed below. Consequently there was error in the deficiency assessment sustained below. Since this involves the legal problem of interpreting the statute in its application to admitted facts, the rule of Dobson v. C. I. R., 320 U.S. 489, 64 S.Ct.

239, 88 L.Ed. 248, does not apply to exclude our review. McWilliams v. C. I. R., 67 S.Ct. 1477; Bingham's Trust v. C. I. R., 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670, 163 A.L.R. 1175.

Reversed.