**H. H. KING FLOUR MILLS CO.,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**No. 4–69–Civ. 369.**

United States District Court,
D. Minnesota,
Fourth Division.

March 19, 1971.

F. W. Gaasedelen, Gaasedelen, Solie & Sjostrom, Minneapolis, Minn., for plaintiff.

Joseph T. Walbran, Asst. U. S. Atty., Minneapolis, Minn., Nestor M. Nicholas, Atty., Department of Justice, Washington, D. C., for defendant.

## MEMORANDUM DECISION

LARSON, District Judge.

The plaintiff seeks recovery of Federal income taxes in the amount of $17,230.36 which were allegedly erroneously assessed and collected by the United States of America for the taxable year ending December 31, 1962.

As of January 1, 1962, the plaintiff corporation had 4,800 shares of $100 par value stock outstanding. L. George Truesdell, Jr., and Arthur W. Quiggle were the sole shareholders, owning 2,400 shares each. On December 14, 1959, Mr. Truesdell and Mr. Quiggle executed an agreement which provided that either party could have his stock completely redeemed by the plaintiff if he so desired.

On May 29, 1962, the shareholders of plaintiff H. H. King Flour Mills Co. voted to accept the offer of L. George Truesdell, Jr., pursuant to the agreement to surrender his shares of stock for redemption. In return he was to receive one-half of the company's investment portfolio, plus $85,500 in cash.

The accumulated earnings tax imposed by § 531 of the Internal Revenue Code was assessed and agreed to by the plaintiff for the years 1958–61. The tax was again assessed and paid for the taxable year 1962, and it is this assessment that plaintiff is attacking in this suit.

Plaintiff contends that with regard to the year 1962 it should be allowed a dividends paid deduction under § 561 of the Internal Revenue Code for that portion of the amount paid to Mr. Truesdell in redemption of his stock which was chargeable to earned surplus. This treatment of the distribution would eliminate for the year 1962 any accumulated taxable income and hence any liability for the accumulated earnings tax imposed by § 531.

The purpose of the retained earnings tax imposed by § 531 of the Code is to discourage the use of a corporation to accumulate income and shelter the shareholders from personal income tax rates. Although money accumulated in this manner is not immediately available to the taxpayer, he may be content with ultimate transfer at death, sale of the stock with long term capital gains treatment, or an exchange in a tax-free merger. By imposing a special tax on corporations for accumulation beyond the reasonable needs of the business, Congress felt it could encourage distribution to the shareholders through dividends.

Section 562(a) of the Internal Revenue Code provides that if a corporation in fact declares dividends or makes certain distributions in the nature of dividends, a deduction of the amount distributed is allowed in computing the income, if any, upon which the retained earnings tax will be imposed. Section 562(b) provides similar treatment for certain distributions in liquidation.

In order, however, for any distribution to qualify as a dividend paid deduction, it cannot be preferential. Section 562(c) of the Internal Revenue Code provides:

"The amount of any distribution shall not be considered as a dividend for purposes of computing the dividends paid deduction, unless such distribution is pro rata, with no preference to any share of stock as compared with other shares of the same class, and with no preference to one class of stock as compared with another class except to the extent that the former is entitled (without reference to waivers

of their rights by shareholders) to such preference."

█ The purpose of the above provision is readily apparent. It was inserted to prevent avoidance of the accumulated earnings tax while at the same time manipulating dividends or other distributions to obtain tax advantages similar to those experienced by leaving earnings in the corporation.

Plaintiff originally argued that § 562(c) did not apply to the distribution made to Mr. Truesdell. However, it has since abandoned that claim and now concedes that § 562(c) does apply. Plaintiff contends that the distribution to Mr. Truesdell is non-preferential within the meaning of § 562(c).

The plaintiff argues that pro rata within § 562(c) means that the distribution must in some way merely reflect the interest of the distributee in the corporation. Apparently the measure in the present case is to be the total value of the business. In other words, since Mr. Truesdell owned one-half of the plaintiff corporation's stock and he received one-half of the total value of the corporation's assets in redemption of his stock, the distribution was a pro rata one within the meaning of § 562(c) of the Internal Revenue Code.

This is a novel theory and it is one which is at odds with the view uniformly adopted by the Courts in applying the pro rata concept. In order for a distribution to be pro rata it has always been assumed that the amount of the distribution received by each distributee must bear a relationship to the total distribution which reflects the recipient's proportional interest in the corporation. In other words, the division of the distribution must reflect the different proportional interests of the shareholders.[1] This is opposed to plaintiff's theory which would require the distribution to

each shareholder to reflect that shareholder's proportional interest in the total value of the corporation.

This Court is aware that adhering to the generally accepted definition of pro rata removes from the ambit of § 562 dividend paid deduction treatment a substantial number of distributions in redemption that qualify as partial liquidations. The instant case admittedly represents such a distribution.

The redemption of Mr. Truesdell's stock was clearly a distribution in exchange for the stock pursuant to the operation of § 302(b) (3) of the Code which provides for such treatment "if the redemption is in complete redemption of all of the stock of the corporation owned by the shareholder." (26 U. S.C. § 302(b) (3)). The last sentence of § 346(a) provides that "For purposes of section 562(b) (relating to the dividends paid deduction), * * * a partial liquidation includes a redemption of stock to which section 302 applies." Read together they imply strongly that a § 302 distribution can qualify as a dividends paid deduction pursuant to § 562(b) (1) (A). That provision allows that:

"in the case of amounts distributed in liquidation, that part of such distribution which is properly chargeable to earnings and profits * * * shall be treated as a dividend for purposes of computing the dividends paid deduction." 26 U.S.C. § 562(b) (1) (A).

However, the plaintiff admits that § 562(c) (*supra*) also applies to the distribution. Since most § 302 distributions involve less than all of the shareholders of the class of stock being redeemed, such a redemption can never be pro rata within the meaning of the term as it is generally applied. The only apparent solution to the foregoing situation is to apply a special pro rata rule, such as the

1. Forstner Chain Corp. v. Commissioner, 45 B.T.A. 19 (1941); Safety Convoy Co. v. Thomas, 139 F.2d 219 (5th Cir. 1943); George E. Warren Co. v. United States, 53 F.Supp. 578 (D.C.Mass.1944); May Hosiery Mills, Inc. v. Commissioner, 42 B.T.A. 646 (1940), aff'd 123 F.2d 858 (4th Cir. 1941).

one suggested by plaintiff, to § 302(b)(3) redemptions.

■■ There is, in this Court's opinion, no justification for such a procedure, certainly not on the facts in the instant case. Such an interpretation would be contrary to the explicit language of § 562(c). As this Court reads that provision, it requires that "the *amount* of any distributions" *in addition to* being pro rata must also be without "preference to any share of stock as compared with other shares of the same class." In the instant case the shares of stock owned by Mr. Truesdell received 100 per cent of the amount of the distribution while the shares owned by Mr. Quiggle received absolutely nothing. The preferential nature of such a distribution cannot be obscured or eliminated by the exercise of conceptual and semantical gymnastics, no matter how elaborate they might be. The amount of the distribution as set forth in the stipulation of facts was $691,378.94. When the amount being distributed is allocated in the amount of $288 per share for 2,400 shares of common stock and $0.00 per share for the remaining 2,400 shares of common stock, it is impossible for this Court to escape the conclusion that the distribution is preferential as to those shares receiving $288 per share.[2] This same preference would obtain in almost all cases governed by the plaintiff's proposed pro rata rule.

As a result, the plaintiff's proposed pro rata rule becomes a meaningless semantical distinction. Although the distribution is pro rata, it is also preferential and hence cannot qualify as a dividends paid deduction. The only situation in which this result would not obtain is where each shareholder receives a distribution of the company's total worth commensurate with his stock holdings. This, however, would be in most cases a complete liquidation and eliminate the problem of a dividend paid deduction. Furthermore, it would obviate the need for plaintiff's rule since such a distribution would be pro rata under the existing interpretation of that concept.

It is the opinion of this Court that the distribution made by plaintiff to Mr. L. G. Truesdell in 1962 was non-pro rata and was preferential within the terms of § 562(c) of the Internal Revenue Code (26 U.S.C. § 562(c)). As a result, no portion of such distribution can be utilized in calculating the dividends paid deduction.

Accordingly judgment will be entered for defendant.

---

2. The cases cited by plaintiff in support of its position that such a distribution is not preferential are inapposite. Two of the cases deal with situations in which the form of distribution varied from one shareholder to another, but where all shareholders received an amount commensurate with their holdings. Southeastern Finance Co., 4 T.C. 1069 (1945), involved a dividend payable in cash or stock where one party elected cash and another chose stock. Union Sugar Co., 1 T.C.M. 159 (Docket 106845), involved the liquidation of preferred stock in which preferred shareholders could either convert to common stock or could redeem for cash. In neither case was the entire distribution made to less than all of the shareholders in that class. New York Stocks v. Commissioner, 164 F.2d 75 (2d Cir. 1947), involved an open-end investment company. Under the provisions governing regulated investment companies it received a privileged tax status but was required to distribute at least 90 per cent of its income currently. The shareholders of the company were entitled to surrender their shares at any time in return for their proportionate share of earnings and assets to the date of surrender. The Court, in holding that such distributions made upon the demand of the shareholder were not preferential, recognized the peculiar nature of the open-end investment trust. It was obviously impossible for the company to declare and pay a complete dividend every time shares were offered for redemption. That was likely to occur every day of the year. A similar result was reached two years later in National Securities Series v. C. I. R., 13 T.C. 884 (1949). No claim can possibly be made that plaintiff in this action is an open-end investment trust and thus able to avail itself of this narrow modification of the preference rule.