## TRUST UNDER THE WILL OF BINGHAM ET AL. *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 932.  Argued April 27, 1945.—Decided June 4, 1945.

366

*Mr. Arthur A. Ballantine,* with whom *Mr. George E. Cleary* was on the brief, for petitioners.

*Mr. Ralph F. Fuchs,* with whom *Assistant Solicitor General Cox, Assistant Attorney General Samuel O. Clark, Jr., Messrs. Sewall Key, J. Louis Monarch* and *L. W. Post* were on the brief, for respondent.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

Petitioners are the trustees of a testamentary trust created for a term of twenty-one years under the will of Mary Lily (Flagler) Bingham. The testatrix bequeathed to the trustees the residue of her estate, including a large number of securities. The trustees were empowered in their discretion to sell any of the property held in trust (except certain securities of two companies designated as the "principal properties"), to invest and reinvest the proceeds and the income from the trust fund, and to use the proceeds and the income for the benefit of the principal properties and for the "maintenance, administration or development of the said principal or subsidiary properties." The trustees were to pay specified amounts annually to certain legatees. When the niece of the testatrix reached a certain age, she was to receive from the trust a specified amount in cash or securities. At the end of twenty-one years, the trustees were directed to pay other legacies, and to distribute the remainder of the fund in equal parts to a brother and two sisters of the testatrix.

In 1935 petitioners paid the bequest to the niece partly in securities. The Commissioner assessed a deficiency of over $365,000 for income tax upon the appreciation in value of the securities while they were in petitioners' hands. In contesting unsuccessfully this deficiency, petitioners paid out in the year 1940 approximately $16,000 in counsel fees and expenses. In that year, also, petitioners paid out about $9,000 for legal advice in connec-

tion with the payment of one of the cash legacies, and in connection with tax and other problems arising upon the expiration of the trust and relating to the final distribution of the trust fund among the three residuary legatees.

The question is whether these legal expenses, paid in 1940, are deductible from gross income in the computation of the trust's income tax, as "non-trade" or "non-business" expenses within the meaning of § 23 (a) (2) of the Internal Revenue Code. That section, added by § 121 of the Revenue Act of 1942, and made applicable to tax years "beginning after December 31, 1938," authorizes the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income." Section 162 of the Code, so far as now relevant, makes § 23 (a) (2) applicable to the income taxation of trusts.

Petitioners, in their income tax return for 1940, took deductions for the legal expenses. The Commissioner disallowed the deductions and assessed a tax deficiency, and petitioners filed the present suit in the Tax Court to set aside the assessment. That Court, after finding the facts as we have stated them, found that the trust property was held for the production of income; that all the items in question were ordinary and necessary expenses of the management of the trust property; and that the fees and expenses for contesting the income tax deficiency assessment were also for the conservation of the trust property. It therefore concluded that all were rightly deducted in calculating the taxable net income of the trust. 2 T. C. 853.

On the Government's petition for review, the Court of Appeals for the Second Circuit reversed. 145 F. 2d 568. We granted certiorari, 324 U. S. 835, on a petition which asserted as grounds for the writ that the decision of the

Court of Appeals departed from the principles laid down in *Dobson* v. *Commissioner,* 320 U. S. 489, governing review of decisions of the Tax Court, and that the decision conflicted in principle with *Commissioner* v. *Heininger,* 320 U. S. 467, and *Kornhauser* v. *United States,* 276 U. S. 145.

The Court of Appeals left undisturbed the Tax Court's findings that the questioned items were ordinary and necessary expenses for the management or conservation of the trust property, but it held that the fees for contesting the tax deficiency were nevertheless not deductible under § 23 (a) (2). It thought that the expenses of contesting the income tax had nothing to do with the production of income and hence were not deductible as expenses "for the production of income" within the meaning of the statute. The court also thought that these expenses were not deductible, because they were paid in connection with property held by the trustees "ready for distribution," and hence not "for the production of income." Similarly it held that the fees for professional services rendered in connection with the payment of legacies and the distribution of the trust fund, were not expenses relating to the management of property held for the production of income, since they were rendered after the trust term had expired and when the property was ready for distribution.

The Government makes like arguments here. In addition it urges that the expenses in connection with the distribution of the trust fund were not expenses of management of the trust property held for the production of income but only expenses relating to its devolution; and that the expenses are not deductible under § 23 (a) (2) because there was no proximate relationship between the expenses when paid and the property then held in trust.

We think that these objections to the deductions fail to take proper account of the plain language of § 23 (a)

(2), and the purpose of the section as disclosed by its statutory setting and legislative history; and that notwithstanding the weight of the Tax Court's decision against them, they raise questions of law reviewable by the Circuit Court of Appeals and by this Court.

The requirement of § 23 (a) (2) that deductible expenses be "ordinary and necessary" implies that they must be reasonable in amount and must bear a reasonable and proximate relation to the management of property held for the production of income. See H. Rep. No. 2333, 77th Cong., 2d Sess., p. 75; Sen. Rep. No. 1631, 77th Cong., 2d Sess., p. 88. Ordinarily questions of reasonableness and proximity are for the trier of fact, here the Tax Court. *Commissioner* v. *Heininger, supra,* 475; *McDonald* v. *Commissioner,* 323 U. S. 57, 64–65; see *Commissioner* v. *Scottish American Investment Co.,* 323 U. S. 119. And even when they are hybrid questions of "mixed law and fact," their resolution, because of the fact element involved, will usually afford little concrete guidance for future cases, and reviewing courts will set aside the decisions of the Tax Court only when they announce a rule of general applicability, that the facts found fall short of meeting statutory requirements. *Dobson* v. *Commissioner, supra,* 502; *Commissioner* v. *Estate of Bedford, ante,* p. 283; cf. Paul, "Dobson v. Commissioner," 57 Harv. Law Rev. 753, at 828–832, 836–837. But whether the applicable statutes and regulations are such as to preclude the decision which the Tax Court has rendered, is, as was recognized in *Dobson* v. *Commissioner, supra,* 492–493, a question of law reviewable on appeal. See also *Commissioner* v. *Heininger, supra,* 475.

Here the decision of the Court of Appeals was that the expenses were not deductible because they were not for the purpose of producing income or capital gain, and because the trust property, being ready for distribution, was no longer held for the production of income. The

terms of the trust, the nature of the property, and the duties of the trustees with respect to it, were all found by the Tax Court and are not challenged. The questions whether, on the facts found, the expenses in question are nondeductible, either because they were not to produce income or because they were related to the management of property which was not held for the production of income, turn in this case on the meaning of the words of § 23 (a) (2), "property held for the production of income." They are therefore questions of law, decision of which is unembarrassed by any disputed question of fact or any necessity to draw an inference of fact from the basic findings. See *Commissioner* v. *Scottish American Investment Co., supra.* They are "clear cut" questions of law, decision of which by the Tax Court does not foreclose their decision by appellate courts, as in other cases, *Dobson* v. *Commissioner, supra,* 492–493, although their decision by the Tax Court is entitled to great weight. *Dobson* v. *Commissioner, supra,* 501–502, and cases cited; cf. *Medo Photo Supply Corp.* v. *Labor Board,* 321 U. S. 678, 681–682, n. 1, and cases cited.

Since our decision in the *Dobson* case we have frequently reexamined, as matters of law, determinations by the Tax Court of the meaning of the words of a statute as applied to facts found by that court.[1] A question of law is not any the less such because the Tax Court's de-

---

[1] See, e. g., *Security Mills Co.* v. *Commissioner,* 321 U. S. 281, 286; *Douglas* v. *Commissioner,* 322 U. S. 275; *Commissioner* v. *Harmon,* 323 U. S. 44; *McDonald* v. *Commissioner,* 323 U. S. 57; *Claridge Apartments Co.* v. *Commissioner,* 323 U. S. 141, 145; *Fondren* v. *Commissioner,* 324 U. S. 18; *Choate* v. *Commissioner,* 324 U. S. 1; *Commissioner* v. *Estate of Field,* 324 U. S. 113; *Webre Steib Co.* v. *Commissioner,* 324 U. S. 164; *Commissioner* v. *Smith,* 324 U. S. 177; *Commissioner* v. *Wemyss,* 324 U. S. 303; *Commissioner* v. *Wheeler,* 324 U. S. 542; *Estate of Putnam* v. *Commissioner,* 324 U. S. 393; *Angelus Milling Co.* v. *Commissioner, ante,* p. 293; *Commissioner* v. *Estate of Bedford, ante,* p. 283; *Commissioner* v. *Disston, post,* p. 442.

cision of it is right rather than wrong. Whether or not its decision is "in accordance with law" is a question which the statute, Int. Rev. Code, § 1141 (c) (1), expressly makes subject to appellate review. Congress, when it thus authorized review of questions of law only, was not unaware of the difficulties of such a review of the decisions of a tribunal which decides questions both of law and of fact. But Congress did not dispense with such review.

Hence the statute does not leave the Tax Court as the final arbiter of the issue whether its own decisions of questions of law are right or wrong. That can only be ascertained upon resort to the prescribed appellate process by a consideration of the merits of the point of law involved, and by its decision at the conclusion of the process, not before it begins. The fact that the Court of Appeals below, while accepting the Tax Court's findings of fact, has nevertheless reversed its decision, would seem not to leave the question of law decided so free from doubt that the mandate of the statute could rightly be disregarded on any theory. If review were to be denied in this case, it would be difficult to say that any construction of a taxing statute by the Tax Court would be subject to appellate review.

We turn to the first ground for reversal relied on by the Court of Appeals, that the property was held for distribution, and no longer for the production of income. The fact that the trustees, in the administration of the trust, were required to invest its corpus for the production of income and to devote the income to the purposes of the trust, establishes, as the Tax Court held, that the trust property was held for the production of income during the stated term of the trust. The decisive question is whether the property ceased to be held for the production of income because, as the trust term reached its expiry date, the trustees were under a duty to distribute the property among the remaindermen.

It is true that expiration of the trust operated to change the beneficiaries entitled to receive the income of the trust property, from those entitled to the income during the term of the trust to the remaindermen. But the duty of the trustees to hold and conserve the trust property, and until distribution, to receive income from it, continued. The property did not cease to be held for the production of income because, upon the expiration of the trust and until distribution, the trustees were under an additional duty to distribute the trust fund, or because the trustees, upon distribution, were then accountable to new and different beneficiaries, the residuary legatees, both for the principal of the fund and any income accumulating after the expiry date. To exclude from the deduction privilege, expenses which the Tax Court has held to be expenses of management of the trust, on the ground that the trust fund, upon the expiration of the trust, ceased to be "held for the production of the income" would be to disregard the Tax Court's findings of fact and the words of the statute, and would defeat its obvious purpose.

Nor is there merit in the court's conclusion that the expenses were not deductible because they were not for the production of income. Section 23 (a) (2) provides for two classes of deductions, expenses "for the production . . . of income" and expenses of "management, conservation, or maintenance of property held for the production of income." To read this section as requiring that expenses be paid for the production of income in order to be deductible, is to make unnecessary and to read out of the section the provision for the deduction of expenses of management of property held for the production of income.

There is no warrant for such a construction. Section 23 (a) (2) is comparable and *in pari materia* with § 23 (a) (1), authorizing the deduction of business or trade expenses. Such expenses need not relate directly to the production of income for the business. It is enough that

the expense, if "ordinary and necessary," is directly connected with or proximately results from the conduct of the business. *Kornhauser* v. *United States, supra,* 152–153; *Commissioner* v. *Heininger, supra,* 470–471. The effect of § 23 (a) (2) was to provide for a class of non-business deductions coextensive with the business deductions allowed by § 23 (a) (1), except for the fact that, since they were not incurred in connection with a business, the section made it necessary that they be incurred for the production of income or in the management or conservation of property held for the production of income. *McDonald* v. *Commissioner, supra,* 61–62, 66; and see H. Rep. No. 2333, 77th Cong., 2d Sess., pp. 46, 74–76; S. Rep. No. 1631, 77th Cong., 2d Sess., pp. 87–88.

Since there is no requirement that business expenses be for the production of income, there is no reason for that requirement in the case of like expenses of managing a trust, so long as they are in connection with the management of property which is held for the production of income. Section 23 (a) (2) thus treats the trust as an entity for producing income comparable to a business enterprise, and like § 23 (a) (1) permits deductions of management expenses of the trust, even though the particular expense was not an expense directly producing income. It follows that all of the items of expense here in question are deductible if, as the Tax Court has held, they are expenses of management or conservation of the trust fund, whether their expenditure did or did not result in the production of income.

The Government contends that the expenses incurred in connection with the distribution of the corpus of the trust to legatees are not deductible, because they are not expenses of managing income producing property, but expenses in connection with the devolution of the property. If the suggestion is correct, it would follow that expenses incurred in distributing the income of the trust

to the income beneficiaries are likewise not deductible, since the distribution of income is also a devolution of trust property. But the duties of the trustees were not only to hold the property for the production of income and to collect the income, but also, in administering the trust, to distribute the income and the principal so held from time to time, and the remainder of the principal at the expiration of the trust. Performance of each of these duties is an integral part of carrying out the trust enterprise. Accordingly, as the Tax Court held, the costs of distribution here were quite as much expenses of a function of "management" of the trust property as were expenses incurred in producing the trust income; and if "ordinary and necessary," they were deductible.

In support of its contention, the Government relies upon a part of the House Committee Report, accompanying the bill which became the Revenue Act of 1942, see H. Rep. No. 2333, 77th Cong., 2d Sess., p. 75, and upon Treas. Regs. 103, § 19.23 (a)–15, neither of which was mentioned by the Court of Appeals. They state that an administrator or executor may not deduct expenses incurred in the administration of the estate of a decedent, including those of distributing assets to the beneficiaries. It is argued that by analogy like expenses of trustees should not be deductible. But it is to be noted that there is no such statement in the Report or Regulations as to the distribution expenses of trustees. On the contrary, the Regulations, § 19.23 (a)–15, in dealing specifically with expenses of trustees, provides only that their expenses of management and conservation of the trust property held for the production of income are deductible. And the references in the Report to the non-deductibility of expenses of administrators and executors were in explanation of the Congressional purpose to prevent the specified administration expenses from being deductible both for income and estate taxation. To accomplish that pur-

pose the Report recommended an amendment, which became § 161 (a) of the Revenue Act of 1942, adding § 162 (e) to the Internal Revenue Code. Section 162 (e) provides, with immaterial exceptions, that "amounts allowable under § 812 (b) as a deduction in computing the net estate of a decedent shall not be allowed as a deduction under § 23." Here, as the Tax Court found, there is no possibility of such a double deduction, since the expenses were not deductible under the decedent's estate tax return.

What we have said applies with equal force to the expenses of contesting the tax deficiency. Section 23 (a) (2) does not restrict deductions to those litigation expenses which alone produce income. On the contrary, by its terms and in analogy with the rule under § 23 (a) (1), the business expense section, the trust, a taxable entity like a business, may deduct litigation expenses when they are directly connected with or proximately result from the enterprise—the management of property held for production of income. *Kornhauser* v. *United States, supra,* 152–153; *Commissioner* v. *Heininger, supra,* 470–471. The Tax Court could find as a matter of fact, as it did, that the expenses of contesting the income taxes were a proximate result of the holding of the property for income. And we cannot say, as a matter of law, that such expenses are any less deductible than expenses of suits to recover income. Cf. *Commissioner* v. *Heininger, supra.*

The Government relies on Treas. Regs. 103, § 19.23 (a)–15, which provide that "expenditures incurred . . . for the purpose of recovering taxes (other than recoveries required to be included in income), or for the purpose of resisting a proposed additional assessment of taxes (other than taxes on property held for the production of income) are not deductible expenses under this section [§ 23 (a) (2) of the Code], except that part thereof which the

taxpayer clearly shows to be properly allocable to the recovery of interest required to be included in income." So far as this regulation purports to deny deduction of litigation expense unless it is to produce income, it is not in conformity to the statute, for the reasons already stated, or with the Regulation already mentioned, which provides that in addition to expenses for the production or collection of trust income, expenses of management or conservation of trust property held for the production of income are also deductible. To that extent and to the extent that it departs from the rule of *Kornhauser* v. *United States, supra,* it conflicts with the meaning and purpose of § 23 (a) (2), and so is unauthorized. *Helvering* v. *Reynolds Tobacco Co.,* 306 U. S. 110.

We find no error of law in the judgment of the Tax Court. Its judgment will be affirmed and that of the Court of Appeals reversed.

*Reversed.*

MR. JUSTICE FRANKFURTER, concurring.

This is one of those cases in which the ground of the decision is more important than the decision itself, except to the parties. And so, while I concur in the result, I feel bound to say that I think the manner in which it is reached is calculated to increase the already ample difficulties in judicial review of Tax Court determinations. The course of our decisions since *Dobson* v. *Commissioner,* 320 U. S. 489, calls for clarification and avoidance of further confusion.

In *Dobson* v. *Commissioner, supra,* this Court elaborately considered the special function of the Tax Court and the very limited functions of the Circuit Courts of Appeals and of this Court in reviewing the Tax Court. The unanimous opinion in the *Dobson* case was surely a case of much ado about nothing, if it did not emphasize the vast range of questions as to which the Tax Court

should have the final say. In making the *Dobson* pronouncement, the Court was not unaware that "questions of fact" and "questions of law" were legal concepts around which dialectic conflicts have been fought time out of mind. The *Dobson* opinion took for granted that they are useful instruments of thought even though not amenable to fixed connotations. The terms are unmanageable and too confusing if it be assumed that unless they have invariant meaning, that is, unless they serve the same purpose for every legal problem in which they are invoked, they can serve no purpose for any problem. The contribution of the *Dobson* case, one had a right to believe, was the restriction of reviewable "questions of law" in tax litigation to issues appropriate for review in relation to the machinery which Congress has designed for such litigation. The *Dobson* case eschewed sterile attempts at differentiation between "fact" and "law" in the abstract. Instead, it found significance in the scheme devised by Congress for adjudicating tax controversies whereby Congress had, in the main, centralized in the Tax Court review of tax determinations by the Treasury and had made the decisions of the Tax Court final unless they were "not in accordance with law," 44 Stat. 9, 110, 26 U. S. C. § 1141 (c) (1), with the result that, as a practical matter, only a small percentage of Tax Court decisions gets into the Circuit Courts of Appeals, and a still smaller percentage reaches this Court.[1] Therefore, the decisions of the Cir-

---

[1] As a matter of historic survival, some tax litigation still reaches district courts throughout the country. To that extent there is a qualification upon the centralization of review in the Tax Court of Treasury determinations. But the overwhelming volume of tax litigation goes to the Tax Court. The ratio is about 6 to 1. The fact that the district courts continue to have vestigial jurisdiction may call for a scientific revamping of jurisdiction in tax cases. It does not counsel against giving the fullest efficacy to Tax Court decisions consonant with its special responsibility. See Griswold, *The Need for a Court of Tax Appeals* (1944) 57 Harv. L. Rev. 1153; Miller, *Can Tax Appeals Be Centralized?* (1945) 23 Taxes 303.

cuit Courts of Appeals, and even more so of this Court, are bound to be more or less episodic and dependent upon contingencies that cannot give these appellate courts that feel of the expert which is so important for wise construction of such interrelated and complicated enactments as those which constitute our revenue laws. These factors, so decisive in the stream of tax litigation, weigh heavily in apportioning functions between the Tax Court and the courts reviewing the Tax Court. Accordingly, the vital guidance of the *Dobson* opinion was that a decision of the Tax Court should stand unless it involves "a clear-cut mistake of law," 320 U. S. 489, 502. Considerations that may properly govern what are to be deemed questions of fact and questions of law as between judge and jury, or considerations relevant to the drawing of a line between questions of fact and questions of law on appeal from a court of first instance sitting without a jury, or in determining what is a foreclosed question of fact in cases coming to this Court from State courts on claims of unconstitutionality, may be quite misleading when a decision of the Tax Court is challenged in the various Circuit Courts of Appeals or here as "not in accordance with law."

Certainly, all disputed questions regarding events and circumstances—the raw materials, as it were, of situations which give rise to tax controversies—are for the Tax Court to settle and definitively so. Secondly, there are questions that do not involve disputes as to what really happened—as, for instance, what expenses were incurred or what distribution of assets was made—but instead turn on the meaning of what happened as a matter of business practice or business relevance. Here we are in the domain of financial and business interpretation in relation to taxation as to which the Tax Court presumably is as well informed by experience as are the appellate judges and certainly more frequently enlightened by the volume and range of its litigation. Such issues bring us treacherously

near to what abstractly are usually characterized as questions of law, whether the question of division of labor in a litigation is between judges and lay juries, or between judges of first instance and of appellate courts when there is no difference of specialized experience between the two classes of judges. Thus, the construction of documents has for historic reasons been deemed to be a question of law in the sense that the meaning is to be given by judges and not by laymen. But this crude division between what is "law" and what is "fact" is not relevant to the proper demarcation of functions as between the Tax Court and the reviewing courts. To hold that the Circuit Courts of Appeals, and eventually this Court, must make an independent examination of the meaning of every word of tax legislation, no matter whether the words express accounting, business or other conceptions peculiarly within the special competence of the Tax Court, is to sacrifice the effectiveness of the judicial scheme designed by Congress especially for tax litigation to an abstract notion of "law" derived from the merely historic function of courts generally to construe documents, including legislation. More than that. If the appellate courts must make an independent examination of the meaning of every word in tax legislation, on the assumption that the construction of legislative language is necessarily for the appellate courts, how can they reasonably refuse to consider claims that the words have been misapplied in the circumstances of a particular case? Meaning derives vitality from application. Meaning is easily thwarted or distorted by misapplication. If the appellate courts are charged with the duty of giving meaning to words because they are contained in tax legislation, they equally cannot escape the duty of examining independently whether a proper application has been given by the Tax Court.

The specialized equipment of the Tax Court and the trained instinct that comes from its experience ought to

leave with the Tax Court the final say also as to matters which involve construction of legal documents and the application of legislation even though the process may be expressed in general propositions, so long as the Tax Court has not committed what was characterized in the *Dobson* case as a "clear-cut mistake of law."

That serves as a guide for judgment even though no inclusive definition or catalogue is essayed. The Tax Court of course must conform to the procedural requirements which the Constitution and the laws of Congress command. Likewise, in applying the provisions of the revenue laws, the Tax Court must keep within what may broadly be called the outward limits of categories and classifications expressing legislative policy. Congress has invested the Tax Court with primary—and largely with ultimate—authority for redetermining deficiencies. It is a tribunal to which mastery in tax matters must be attributed. The authority which Congress has thus given the Tax Court involves the determination of what really happened in a situation and what it means in the taxing world. In order to redetermine deficiencies the Tax Court must apply technical legal principles. The interpretation of tax statutes and their application to particular circumstances are all matters peculiarly within the competence of the Tax Court. On the other hand, constitutional adjudication, determination of local law questions and common law rules of property, such as the meaning of a "general power of appointment" or the application of the rule against perpetuities, are outside the special province of the Tax Court. See Paul, *Dobson v. Commissioner: the Strange Ways of Law and Fact* (1944) 57 Harv. L. Rev. 753, 847–48. Congress did not authorize review of all legal questions upon which the Tax Court passed. It merely allowed modification or reversal if the decision of the Tax Court is "not in accordance with law." But if a statute upon which the Tax

382

Court unmistakably has to pass allows the Tax Court's application of the law to the situation before it as a reasonable one—if the situation could, without violence to language, be brought within the terms under which the Tax Court placed it or be kept out of the terms from which that Court kept it—the Tax Court cannot in reason be said to have acted "not in accordance with law." In short, there was no "clear-cut mistake of law" but a fair administration of it.

If these considerations are to prevail, the sole question before a Circuit Court of Appeals is whether the decision by the Tax Court presents a "clear-cut mistake of law." There should be an end of the matter once it is admitted that the application made by the Tax Court was an allowable one. If a question becomes a reviewable question in tax cases because, abstractly considered, it may be cast into a "pure question of law," it would require no great dialectical skill to throw most questions which are appealed from the Tax Court into questions of law independently reviewable by the Circuit Courts of Appeals. The road would be open to a new insistence for increased tax reviews by this Court on *certiorari*. The intention of the *Dobson* case was precisely otherwise. It was to centralize responsibility in the Tax Court, to minimize isolated intrusions by the Circuit Courts of Appeals into the technical complexities of tax determinations except when the Tax Court has clearly transcended its specialized competence, and to discourage resort to this Court in tax cases except where conflict among the circuits or constitutional questions or a "clear-cut mistake of law" of real importance may call for our intervention.

Let us apply these governing considerations to the case in hand. The trustees here paid, as expenses in connection with the trust, certain legal fees, and these charges they deducted from the gross trust income for 1940. The Commissioner disallowed these deductions. The legal

services concerned (1) litigation in which the trustees unsuccessfully contested a deficiency claim based on taxable gain to the estate, (2) payment of a legacy, and (3) problems arising from the expiration of the trust and the disposition of its assets. The sole question before the Tax Court was whether these fees and charges were deductible as expenses incurred "for the management, conservation, or maintenance of property held for the production of income" under § 121 (a) of the Revenue Act of 1942, 56 Stat. 798, 819.

Whether these payments constituted expenses "for the management . . . of property held for the production of income," may as fairly be said to be a question of fact, namely, the purpose which these payments served with relation to property held for the production of income, as it could be said that they involve a proper construction of what the statute means by "management" of such property. The truth of the matter is that the problem involves a judgment regarding the interplay of both questions, namely, what relation do these payments have to what may properly be deemed the managerial duties of trustees. It is possible to transform every so-called question of fact concerning the propriety of expenses incurred by trustees into a generalized inquiry as to what the duties of a trustee are and, therefore, whether a particular activity satisfied the conception of management which trusteeship devolves upon a trustee. Such a way of dealing with these problems inevitably leads to casuistries which are to be avoided by a fair distribution of functions between the Tax Court and the reviewing courts. . The fact that this problem may be cast in the form of intellectually disinterested abstractions goes a long way to prove that its solution should be left with the Tax Court.

If the decision by the Tax Court may fairly be deemed to have been restricted to the facts of this case, as it may, it certainly would be an issue of "fact." But even assum-

ing that the "issues are broader than the particular facts presented" by this case, the Tax Court's decision is not deprived of finality. Yet an assumption to the contrary is at the core of the Government's argument. Simply because the correctness of "certain general propositions" is involved does not make the position taken by the Tax Court a question of law. The real question is: What is the nature of the issue upon which the Tax Court has pronounced? If the issue presents a difficulty which it is peculiarly within the competence of the Tax Court to resolve and that court has given a fair answer, every consideration which led to the pronouncement in the *Dobson* case should preclude independent reexamination of the Tax Court's disposition. Regardless of what the question may be termed for purposes of review, the Tax Court's determination should be accorded finality. That the Tax Court has expressed an allowable opinion as to the meaning and application of a tax provision, here § 121 (a) of the 1942 Revenue Act, should suffice to reinstate its decision, without opening the sluices to independent review by the Circuit Courts of Appeals and this Court of multitudinous tax questions. Such is the principle or rule of judicial administration which should guide review of Tax Court determinations.

MR. JUSTICE ROBERTS and MR. JUSTICE JACKSON join in this concurring opinion.