ESTATE OF FRANK HALL, DECEASED, IRVING TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22725. Promulgated July 17, 1951.

*Charles P. Connell, Esq.*, for the petitioner.
*Stephen P. Cadden, Esq.*, for the respondent.

24

OPINION.

HARRON, *Judge:* The petitioner contends that the payments of premiums for the insurance on the life of Snedeker are deductible either under section 23 (a) (1) (A) of the Code, as business expense, or under section 23 (a) (2), as nonbusiness expense. The respondent contends that the insurance premium expense is not deductible under either section.

It is held that the executor and trustee of Hall's estate was not engaged in the conduct of a business on behalf of the beneficiaries of the estate. *United States* v. *Pyne*, 313 U. S. 127 (1941); *Higgins* v. *Commissioner* (C. A. 2, 1940), 111 F. 2d 795, affd. 312 U. S. 212; *City Bank Farmers Trust Co.* v. *Commissioner* (Estate of Duke) (C. A. 2, 1940), 112 F. 2d 457, affd. 313 U. S. 121 (1941); *Estate of Hyman Y. Josephs*, 12 T. C. 1069. The evidence presented to us does not show that the petitioner was any more than "a casual administrator." See, also, T. D. 5196, 1942 C. B.–2, pp. 96, 97, 98. The expense of the insurance premiums is not deductible as a business expense under section 23 (a) (1) (A).

There remains the question whether the insurance premium expenses are deductible as nonbusiness expense under section 23 (a) (2). The following facts are important under this issue: The debt of Snedeker for $150,000 was an asset of Hall's estate. The debt produced $4,500 income annually, 3 per cent of the debt. The interest was a personal obligation of Snedeker which he paid out of his own funds. When the petitioner realized anything from other collateral given to secure the debt, such as payments by the Gulden estate in 1949 and 1950, for example, such payments were applied to reduce the principal amount of the debt. The proceeds of the policies of insurance, if they mature upon the death of Snedeker prior to discharge of the debt, can be applied in full or partial discharge of the principal amount of the debt. The insurance policies are security for the payment of the principal amount of the debt. The insurance policies do not yield income to the estate. Any annual "dividends" under the insurance policies are retained by the insuror and are applied to the annual premiums, according to our understanding. It follows that the expense of the insurance premiums is not an expense which is paid or incurred for the production or collection of income for the estate of Hall.[1]

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME

   (a) EXPENSES.—

        *        *        *        *        *        *        *

   (2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

The next question is whether the insurance premium expense was paid for the management, or conservation, or maintenance of property held for the production of income. We think that the insurance premium expense does not come within the second part of section 23 (a) (2), because the insurance policies on Snedeker's life were security for the collection of the debt, the collection of which was for the benefit of those who had interests in the corpus, or principal, of the estate. If Snedeker should die, the proceeds of the insurance upon his death will be collected by the petitioner to discharge the debt to the extent of $100,000. The function of the assigned insurance policies is to serve as an instrument in the collection of an asset of the estate. The insurance premiums were paid to keep the insurance alive. The cost of the premiums is, therefore, an expense which is directly related to the collection and extinguishment of the debt. Under the regulations of the Commissioner, as amended on December 8, 1942, such expense does not come within section 23 (a) (2) and is not deductible. See 1942 C. B.–2, pp. 96, 99; T. D. 5196, amending section 19.23 (a)–15 of Regulations 103; and section 29.23 (a)–15 of Regulations 111. This regulation is reasonable and properly construes the statute, in our opinion. Cf. *Bingham's Trust* v. *Commissioner*, 325 U. S. 365. It is obvious, beyond the need of observation, that any amount of the principal of the debt which is recovered is not reportable as income of the estate. See *Edmunds* v. *United States* (E. D. Mo., 1947) 71 F. Supp. 29. Cf. *National Engraving Co.*, 3 T. C. 178.

Since the expenditures for insurance premiums, under the facts of this case, are directly related to the preservation of collateral security for the payment of the debt of Snedeker, which security, if collected upon Snedeker's death, will be applied in discharge of the debt, the expediture, in our opinion, is akin to a capital expense. This view finds support in the Surrogate's order approving payment of the insurance premium expense out of principal of the trust. Cf. *City Bank Farmers Trust Co.* v. *Commissioner*, *supra*, pp. 458, 459. Section 23 (a) (2) was not intended to extend deductibility of certain expenses to capital expense, which is not deductible under other provisions of the Code. See *James C. Coughlin*, 3 T. C. 420, 422; *Warren Leslie, Sr.*, 6 T. C. 488.

It is held that the insurance premium expense is not a nonbusiness expense within the scope of section 23 (a) (2) and is not deductible.

It should be pointed out that the insurance expense is recoverable, in part at least, if any of the policies of insurance should be returned to Snedeker, out of the payment he is obliged to make to the petitioner of a sum equal to the then cash surrender value of a policy. The premium expense which the petitioner does not recover will be a cost of collecting the debt, a capital expense.

The petitioner relies on *John Cadwalader, Jr.*, 15 B. T. A. 1; *Dominion National Bank*, 26 B. T. A. 421; and *First National Bank & Trust Co. of Tulsa* v. *Jones*, 143 F. 2d 652. The *Cadwalader* case, involving a loss deduction, is not in point. The issue presented by the pleadings does not involve a question of loss. The *Dominion National Bank* case is distinguishable, also. The taxpayer there was a corporation which was engaged in the conduct of a business. Deduction of the expense of insurance premiums was allowed as an ordinary and necessary business expense. Since the petitioner was not engaged in the conduct of business and is not entitled to the claimed deduction under section 23 (a) (1) (A), the above cited case is not in point. For the same reason, *First National Bank & Trust Co. of Tulsa* v. *Jones, supra*, is not in point. Other authorities cited by the petitioner have been considered, but they do not provide authority in support of petitioner's claim.

Reviewed by the Court.

*Decision will be entered for the respondent.*

DISNEY, *J.*, dissents.

---

MURDOCK, *J.*, dissenting: Section 23 (a) (2) allows a deduction for the ordinary and necessary expenses paid during the taxable year for the management, conservation, or maintenance of property held for the production of income. The petitioner had property in the form of money owed to it by Snedeker on which money Snedeker was required to pay interest. That was property held for the production of income. A policy of insurance on the debtor's life was assigned to the petitioner as collateral security for the debt. The petitioner paid the premiums on those policies during the taxable year. Such payments were ordinary and necessary expenses paid during the taxable year for the management, conservation, or maintenance of property held for the production of income. The situation is not different in principle from fire insurance premiums paid on a policy covering a house owned by the estate on which it is entitled to receive rent from a tenant. Such premiums have always been regarded as ordinary and necessary expenses paid for the management, conservation, or maintenance of such property.

JOHNSON and TIETJENS, *JJ.*, agree with this dissent.