James M. STRAUB, Plaintiff,

v.

Stanley GRANGER, individually and as Collector of Internal Revenue.

Theo. A. STRAUB, Jr., and Jean M. Straub, Plaintiffs,

v.

Stanley GRANGER, individually and as Collector of Internal Revenue.

James M. STRAUB and Theo. A. Straub, Jr., Executors of the Estate of Tecla M. Straub, deceased, Plaintiffs,

v.

Stanley GRANGER, individually and as Collector of Internal Revenue.

Civ. A. Nos. 9429, 9430, 9431.

United States District Court
W. D. Pennsylvania.
May 18, 1956.

Walter W. McVay, Pittsburgh, Pa., for plaintiffs.

D. Malcolm Anderson, Jr., U. S. Atty., Pittsburgh, Pa., for defendant.

JOHN L. MILLER, District Judge.

Plaintiffs, claiming overpayments of income tax for the year 1945 as a result of the disallowance of legal expenses paid in that year, brought these suits for refunds. In the first two of these actions, which were consolidated for trial, deficiencies in the amounts of $1,201.01 and $952.81 were assessed. In the third an original claim for refund in the amount of $1,312.55 was disallowed.

The questions common to these actions are (1) whether amounts expended by taxpayers as attorneys fees are deductible under Section 23(a) (2) of the Internal Revenue Code of 1939 as amended, 26 U.S.C.A., as ordinary and necessary expenses for the management, conservation or maintenance of income-producing property and (2) whether plaintiffs are collaterally estopped to bring these actions by reason of a decision of the Tax Court determining that amounts paid by them in 1944 as broker's fees in connection with the purchase of stock were not deductible under the foregoing section.

At the close of the testimony, all of which was offered by plaintiffs, defendant moved for judgment for the reason that plaintiffs had failed to establish that the legal expenses in controversy were necessary under Section 23(a) (2).

Some of the relevant facts have been stipulated and are found accordingly. Others are found from the testimony.

### Findings of Fact

1. James M. Straub is the brother of Theo. A. Straub, Jr. Jean M. Straub is the wife of Theo. A. Straub, Jr. Tecla M. Straub, now deceased, was the mother of James M. and Theo. A. Straub, Jr.

2. The Fort Pitt Bridge Works, a corporation, was founded in 1896 by the grandfather of the present plaintiffs and another. From that time, members of the Straub family have served as officers and directors of the corporation. Plaintiff, James M. Straub, served as president and a director of the corporation on February 26, 1944, and for about four years prior thereto at an annual salary of $25,000.

3. Members of the Straub family have, for a number of years, held a substantial minority block of shares of the corporation's stock. On February 26, 1944, the stocks and bonds of the corporation were held as follows:

|  | Stocks | Bonds |
| --- | --- | --- |
| James M. Straub | 6806 | $ 42,900 |
| His wife, Jane | 27 | |
| Theo. A. Straub, Jr. | 6030 | 52,300 |
| Tecla M. Straub | 6034 | 40,400 |
| Others of the Straub family | 5766 | |
| Total Straub holdings | 24,663 | 135,600 |
| Others | 45,337 | 249,000 |
| Total | 70,000 | 484,000 |

4. At an annual meeting of the shareholders of the corporation held on February 26, 1944, the Board of Directors, as then constituted, was re-elected. James M. Straub voted his shares and the shares of other members of the Straub family for the re-election of the board in the belief that the board would re-elect the officers of the corporation as they were then constituted.

5. At the organizational meeting of the Board of Directors following the meeting of stockholders on February 26, 1944, Wick, one of the directors of the corporation, was elected president and James M. Straub was elected vice president of the company, and assigned to the company plant, without notice to him prior to the election of the directors by the stockholders that he would not be continued in office as president.

6. On and prior to February 26, 1944, the business of the Fort Pitt Bridge Works was the fabrication and erection of structural steel. At the time in question, certain of the directors of the corporation, including Wick, were desirous of expanding the operations of the corporation by taking on contracts for the construction of tanks, which contracts

would have required increased investment in plant, equipment and personnel, which the corporation as then constituted was not able of itself to finance.

7. Following the meeting of the Board of Directors on February 26, 1944, there was concern among taxpayers for the safety of their investment in the corporation. Their concern arose from the fact that they believed the contemplated changes in the operation of the corporation were unsound and that the corporation was not qualified to manufacture tanks. They also believed that members of the board favoring such changes were not sufficiently experienced in the regular operations of the corporation and that the controlling directors contemplated borrowing funds and altering the financial structure of the corporation in a manner which taxpayers felt was not in the best interest of the corporation or their holdings.

8. The concern of taxpayers was not unreasonable under the circumstances.

9. With the view of reinstating James M. Straub as president of the Fort Pitt Bridge Works, it was agreed by and between taxpayers that an attorney be engaged to determine whether that result could be accomplished and that the fee of the attorney would be shared equally by them.

10. Pursuant to their agreement, counsel was obtained and after inquiry determined that stock of the Fort Pitt Bridge Works could be purchased. Taxpayers were advised by counsel that to maintain their position in the company, additional stock of the corporation should be purchased in order to give them majority control.

11. Taxpayers followed such advice and acquired additional stock over a period of several months. During this period, James M. Straub frequently consulted with counsel and received advice and assistance from him in contacting and meeting with various stockholders and directors of the corporation in connection with implementing the plan to purchase stock.

12. Counsel fees in the amount of $5,050 were charged taxpayers for such services. That amount was reasonable under the circumstances and was paid in the year 1945. Each of taxpayers, pursuant to their agreement, paid one-third of the amount charged as counsel fees and claimed the same as a deduction from gross income in his 1945 income tax return, which deductions were disallowed.

13. Taxpayers acquired 10,755 additional shares of stock of the Fort Pitt Bridge Works during the period of March 23, 1944, to May 29, 1944, making all of such acquisitions through the services of a broker. The broker made purchases of stock at various exchanges without disclosing the names of his principals. For such services, he was paid the sum of $3,000 over and above his ordinary brokerage commission in 1944.

14. Each of taxpayers claimed a deduction, under Section 23(a) (2), of his proportionate share of the $3,000 as an ordinary and necessary expense for the maintenance and conservation of income-producing property in his 1944 income tax return, which was disallowed by the Commissioner for the reason that amounts paid to the broker for the purpose of acquiring stock constituted a capital expenditure. The Tax Court of the United States, Straub v. C. I. R., in a decision promulgated September 1, 1949, at 13 T.C. 288, upheld the Commissioner. The attorneys fees here in controversy were not before the Tax Court, directly or indirectly.

15. At a meeting of the Board of Directors of the corporation held on May 26, 1944, the board was advised that the Straub family had gained control of the corporation in order to protect its interest. At a special meeting of the board held on July 11, 1944, certain directors having resigned, new members were elected. Wick resigned as president of the corporation and James M. Straub was re-elected as president.

16. The main and primary purpose of taxpayers in obtaining legal advice was to protect their existing investment in the Fort Pitt Bridge Works.

17. Expenditures of taxpayers for the legal services in controversy were not made for the purpose of acquiring stock but were ordinary and necessary expenses incurred in the management, conservation or maintenance of income-producing property.

### Discussion

Former Section 23(a) (2) of the Internal Revenue Code, 26 U.S.C.A. § 23(a) (2), 1948 edition, authorizes the deduction, in the case of non-business expenses of an individual, of "all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."

The government maintains that the costs of the legal services described are not deductible under Section 23(a) (2) because of the rule that legal fees paid in acquiring the stock or control of a corporation are capital expenditures. See Crowley v. Commissioner, 6 Cir., 1937, 89 F.2d 715; Newark Milk & Cream Co. v. Commissioner, 3 Cir., 1929, 34 F.2d 854; Missouri-Kansas Pipe Line Co. v. Commissioner, 3 Cir., 1945, 148 F.2d 460. Cases are also cited to demonstrate the nondeductibility of these expenditures under the similar rule that legal fees incurred in defending or perfecting title to property are, for income tax purposes, part of the cost of the property. Garrett v. Crenshaw, 4 Cir., 1952, 196 F.2d 185; Bowers v. Lumpkin, 4 Cir., 1944, 140 F.2d 927, 151 A.L.R. 1336; Boulder Building Corp. v. United States, D.C.W.D.Okl.1954, 125 F.Supp. 512.

However, in Bingham's Trust v. Commissioner, 1945, 325 U.S. 365, 65 S. Ct. 1232, 89 L.Ed. 1670, the Supreme Court held that the requirement that deductible expenses be ordinary and necessary implies that they must be reasonable in amount and bear a reasonable and proximate relation to the management of income-producing property. Conceding the validity of the rules defendant argues for, questions of reasonableness and proximity are, in a given case, primarily factual. Bingham's Trust v. Commissioner, supra, 325 U.S. at page 370, 65 S.Ct. 1232. In Boulder Building Corporation v. United States, supra, 125 F. Supp. at page 514, the court said:

"The line dividing ordinary business expenses and those expenditures attributable to capital is ofttimes difficult to discern. In most instances considerable persuasion can be ushered into play to support each side of a controversy involving such a determination."

The court thinks the weight of the arguments is in plaintiffs' favor. There are two difficulties with defendant's position. First of all, it confuses the nature of taxpayers' original request of counsel with the form of the advice which was given. The question of acquiring stock control, or perfecting title to the stock, did not originate with the Straubs but came into being only after they were told by counsel they could maintain their position in the company in that manner. It can not be doubted that the subsequent dealings of James M. Straub with counsel contributed to the end result of taxpayers' obtaining additional shares of stock, but nevertheless, title to the stock eventually acquired was not perfected by their expenditures for legal services. On the whole, the court is satisfied that such subsequent conferences and legal services are regarded properly in relation to the purpose for which taxpayers obtained counsel rather than to the increased ownership which resulted. What was involved essentially was the rendition of advice as to a method in which they could protect their investment in the company and as to the manner in which that could be done. Cf. Bagley v. Commissioner, 1947, 8 T.C. 130, 132–133.

Secondly, the cases have established a well-defined exception to the rules defendant contends for, which depends upon a determination, where questions of defending or perfecting title to property may be involved, of what the main and primary purpose of the taxpayer has been in incurring the legal, or other, expenses

in issue. Urquhart v. Commissioner, 3. Cir., 1954, 215 F.2d 17; Cf. Allen v. Selig, 5 Cir., 1952, 200 F.2d 487; Hochschild v. Commissioner, 2 Cir., 1947, 161 F.2d 817; Rassenfoss v. Commissioner, 7 Cir., 1946, 158 F.2d 764; Levitt & Sons, Inc. v. Nunan, 2 Cir., 1944, 142 F.2d 795; Helvering v. Community Bond & Mortgage Corp., 2 Cir., 1935, 74 F.2d 727; See Shipp v. Commissioner, 9 Cir., 1954, 217 F.2d 401. Courts have been cautioned that, in tax matters, the form of a transaction is not to prevail over its substance. Urquhart v. Commissioner, supra, 215 F.2d at page 19. Accordingly, the fact that taxpayers' ownership in the corporation was increased partly through the services of counsel does not establish that counsel was paid for acquiring stock. If counsel was retained in the manner in which he was because the Straubs feared their investment was unsafe in the control of the existing management, payment to counsel was not part of the cost of property acquired. Cf. Levitt & Sons, Inc. v. Nunan, supra.

■ Defendant's motion for judgment raised the question of the necessity of legal services to protect taxpayers' income-producing property. From the record, perhaps it could not be concluded that the results the Straubs apprehended would in fact have occurred had they not taken steps to acquire control. However, the court is in accord with the analysis of Judge Learned Hand in Levitt & Sons, Inc. v. Nunan, supra, 142 F.2d at page 798, which makes it clear that the test of necessity is not whether the expected results are inevitable but whether one reasonably thinks they will occur. With such an understanding of the term "necessary" the court believes that there was a necessity that plaintiffs protect their investment and that they had a right to deduct expenditures for counsel in so doing.

■ The only remaining question is whether the judgment of the Tax Court bars the prosecution of these suits. It does so only if the matters now in controversy were actually presented to and determined by the Tax Court as a basis for its decision. Commissioner of Internal Revenue v. Sunnen, 1947, 333 U.S. 591, 597–598, 68 S.Ct. 715, 92 L.Ed. 898; United States v. International Building Co., 1953, 345 U.S. 502, 504–505, 73 S.Ct. 807, 97 L.Ed. 1182. The decision of the Tax Court was that payments made by taxpayers to a stockbroker, for the acquisition of stock, were capital expenditures. There is no evidence in the record that there was occasion or necessity for the court to either consider or determine the nature of the legal expenses now in controversy or the purposes for which they were incurred. The decision of the Tax Court, a certification of which is in evidence, indicates the contrary was the case. The doctrine of collateral estoppel is therefore not applicable.

### Conclusions of Law

1. The court has jurisdiction of the subject matter and the parties.

2. Defendant's motion for judgment should be denied.

3. Plaintiffs are not estopped from prosecuting these actions.

4. Taxpayers' expenditures for the legal services in controversy are deductible under Section 23(a) (2) of the Internal Revenue Code of 1939, as amended.

Entry of a final order will be deferred pending the filing of a stipulation by the parties indicating the amounts due plaintiffs.