April 23, 1993 UNITED STATES COURT OF APPEALS
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1759

JOHN C. TALLEY, ETC.,

Plaintiff, Appellee,

v.

UNITED STATES OF AMERICA,

Defendant, Appellant.

ERRATA SHEET

The opinion of this Court issued April 14, 1993, is amended as
follows:

On the cover sheet: after Hon. Juan M. Perez-Gimenez, add an
asterisk, and in the corresponding footnote state: "Of the District
of Puerto Rico, sitting by designation."

On the cover sheet: after Hon. Juan M. Perez-Gimenez, substitute
"U.S. District Judge" for "U.S. District Court."

On page 6, line 2: substitute "his refund" for "its refund."

On page 15, lines 7-8: substitute "he offered" for "it offered."

On page 15, line 13: substitute "he has" for "it has."

On page 15, line 14: substitute "his refund" for "its refund."

On page 16, line 1: substitute "his refund" for "its refund."

UNITED STATES COURT APPEALS
FOR THE FIRST CIRCUIT

No. 92-1759

JOHN C. TALLEY, ETC.,

Plaintiff, Appellee,

v.

UNITED STATES OF AMERICA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Juan M. Perez-Gimenez*, U.S. District Judge]

Before

Breyer, Chief Judge,

Cyr and Boudin, Circuit Judges.

D. Patrick Mullarkey, Attorney, Department of Justice, with whom

Richard S. Cohen, United States Attorney, James A. Bruton, Acting

Assistant Attorney General, Gary R. Allen, Attorney, Department of

Justice, Kenneth L. Greene, Attorney, Department of Justice, and

Paula K. Speck, Attorney, Department of Justice, were on brief for

appellant.
Joseph J. Rodio with whom Jeffrey M. Gibson, Charles D. Mills and

Rodio & Ursillo, Ltd. were on brief for appellee.

* Of the District of Puerto Rico, sitting by designation.

April 14, 1993

BOUDIN, Circuit Judge. This case started as a dispute

between John Talley ("Talley"), co-executor of the estate of

Percy Talley, and the United States over the tax liability of

the estate. The tax issues have become snarled in confusion

wrought by a cryptic notice from the Internal Revenue

Service, a loosely worded request to admit filed by Talley,

and a set of litigation errors by the government. After

trial, the district court entered judgment for Talley on his

tax refund claim and disallowed the government's effort to

assert a counterclaim. We reverse the district court and

remand for further proceedings.

I. THE FACTS

In October 1984, Talley, acting as co-executor for the

estate, entered into a stipulation with the IRS regarding the

amount of taxes owed by the estate. This stipulation, filed

in the Tax Court, provided that the estate's total tax

liability was $345,103.21. Of this, $222,000 had been paid,

leaving an outstanding liability of $125,103.21. The

stipulation also provided that the estate could submit proof

that it had paid certain state taxes, which would further

reduce its outstanding liability. The stipulation also noted

that of the $345,103.21 tax liability, $288,836.97 had been

"assessed"and $56,266.24was a"[d]eficiency (tobe assessed)."2

2Assessment is the formal step in which the IRS
determines that a specific amount of tax is currently due and
owing to the government from the taxpayer, making the

-2-

In November 1984, the IRS sent the estate a notice

which, as it is the cause of half the confusion, requires

description. Under the heading "Statement of Tax Due On

Federal Tax Return," it showed as the first entry in the

"Assessment" column the figure $56,266.24, designated "tax";

under this was the figure $1,478.80, designated "int,"

presumably interest. The second column, under the heading

"Adjustment or Credit," contained the figure $57,767.39,

apparently designed to reflect credits against liability

allowed by the IRS. Finally, in a third column headed

"Balance Due" there appeared the figure $977.65, which

reflected the difference between the first column figures and

the second column figure. In January 1985, the estate paid

this net amount, $977.65.

Six months later, in May 1985, the IRS sent the estate a

"Statement of Adjustment to Your Account," fixing the

estate's outstanding tax liability at $294,046. The stated

liability, much above the net amount due under the Tax Court

stipulation, appears to include penalties and interest not

previously assessed. In any event, the estate declined to

pay. In response, the IRS began to levy on bank accounts

held by the estate and its distributees, ultimately

collecting approximately $94,000. In the government's view,

taxpayer liable for that amount. Rambo v. United States, 492

F.2d 1060, 1061 n.1 (6th Cir. 1974), cert. denied, 423 U.S.

1091 (1976).

-3-

it was still owed at least $200,000, with interest continuing

to accrue. Talley, by contrast, took the position that no

taxes were owing and that the levies were therefore unlawful.

After exhausting administrative remedies, the estate in

January 1989 filed a complaint in the district court seeking

a refund of the approximately $94,000. The complaint

contended that the estate's outstanding tax liability had

been wholly eliminated prior to the levies. Talley's

complaint averred that this happy situation resulted from a

combination of state tax credits, allegedly amounting to

$77,544, and the November 1984 notice, which (according to

the complaint) "zeroed out" any remaining obligations of the

estate to the IRS. The concept of "zeroing out" was not

explained in the complaint, nor has it been explained since.

Although the government believed that it was still owed

$200,000 or more by the estate, it neglected in answering the

complaint to file a timely counterclaim for the balance. See

Fed. R. Civ. P. 13. It then failed to respond at all to

Talley's request for admissions served on the government on

October 11, 1989, pursuant to Fed. R. Civ. P. 36. Request

no. 12 asked the government to admit that the estate's $977

disbursement in response to the November 1984 notice

"constituted full payment of the balance due on the estate of

Percy Talley as set forth in that notice." Under Fed. R.

-4-

Civ. P. 36(a), the failure to respond to a such a request is

deemed a binding admission, unless the court later grants

leave under Fed. R. Civ. P. 36(b) to withdraw the admission.

New government counsel took over the case in spring

1990, and the case was set for trial in July 1990. In June

1990 the government sought leave to amend its answer and

assert a counterclaim. The government's excuse for this

belated action was that at the time of the original answer,

counsel had lacked the Secretary of the Treasury's approval

to assert a counterclaim. That motion was denied by the

district court on June 19, 1990, even though in the meantime

the court had (for other reasons) deferred the trial until

October 1990. The court's reasons for refusing to allow the

counterclaim are discussed more fully below.

Government counsel also advised the district court in

June 1990 that the government would promptly file a motion

seeking leave to withdraw its admission by default to request

no. 12. The government never filed such a motion, later

taking the view (in a pretrial statement filed on September

10, 1990) that the admission was literally accurate and

harmless to the government's position. The government's new

interpretation was that it had properly admitted that the

$977 payment constituted full payment of the estate's

liability "as set forth in" the notice; but since the notice

was inaccurate, this admission (the government argued) did

-5-

not establish that the payment discharged the taxpayer's

actual liability.

A trial was held before the district court on October

12, 1990. At trial, Talley based his refund claim primarily

upon the government's admission to request no. 12. Over

Talley's objection, the court permitted the government to

introduce evidence of Talley's tax liability according to the

government's calculations. But the court accepted the

evidence subject to the court's reserved ruling on Talley's

claim that the government's admission of request no. 12

barred the evidence and resolved the case. The court stated:

Just so we are clear, I'm allowing [the
government] to present this evidence
because I do not know what I'm going to
do and I wouldn't like to have to come
back and get some more hearing or get
some more testimony. . . [i]f I decide
that you are stuck with your admission .
. ., it would mean you would be
precluded.

The government also moved to amend its pleadings to conform

to the evidence introduced.

After trial, the district court issued a memorandum

opinion in which it rejected the government's interpretation

of request no. 12, and concluded that the request referred to

the estate's actual liability. The court held that the

admission conclusively established that the estate's $977

payment satisfied its total tax liability, and the court

therefore entered judgment in favor of the estate for the

-6-

approximately $94,000 seized from the estate's bank accounts.

The government then appealed, arguing that its admission

pursuant to request no. 12 had been wrongly construed and

that its counterclaim should have been allowed.

II. DISCUSSION

Talley has not claimed in this court any prejudicial

reliance on the original November 1984 notice. It would be

difficult as a factual matter to make any such claim since

about six months later the IRS asserted that the estate owed

over $294,000, and there is no indication that in the

meantime any detrimental reliance had occurred. Indeed,

authorities do not give much comfort to taxpayers invoking

estoppel even when there has been reliance. On the contrary,

the government has even prosecuted taxpayers for cashing

refund checks issued in error. See, e.g., United States v.

McRee, 984 F.2d 1144 (11th Cir. 1993).

Talley's position on appeal, however, does not depend

directly on the original notice or upon estoppel doctrine.

Rather, it is based upon request no. 12 which the government

"admitted" by failing to answer. The district court read the

request, as admitted, to establish that the estate's total

tax liability in November 1984 was only $977.66. An

admission under Fed. R. Civ. P. 36(a) is, by the terms of the

rule, binding on the party making the admission and cannot be

contradicted. Thus, if the district court properly construed

-7-

request no. 12, the government was bound by its admission

(unless the court sua sponte should have permitted the

government to withdraw the admission).

Although the question is a close one, we believe that

both the November 1984 notice and request no. 12 have been

misconstrued. The construction of documents presents, in the

absence of contested background facts, a pure issue of law

open to de novo review. See Trust Under the Will of Bingham

v. Commissioner, 325 U.S. 365, 379-80 (1945). The district

court's effort at construction was complicated by the

government's own changes in position and its failure

adequately to place the documents in context. Nevertheless,

we conclude that the original November 1984 notice did not

state that the estate's total tax liability was only $977,

and the admission by default to request no. 12 did not do so

either.

The November 1984 notice is, of course, an opaque and

potentially misleading document, but in these respects it

does not differ from many IRS notices apparently generated by

computers. No doubt taken in isolation the notice could be

misunderstood by a lay reader to suggest that the estate owed

only $977; but it cannot be taken in isolation and that is

not what it says. Juxtaposed with the Tax Court stipulation,

it is clear that the November 1984 notice merely reflects

three separate tax events: the original additional deficiency

-8-

assessment promised by the stipulation ($56,266.24), plus a

small amount of accrued interest ($1,478), minus credits

($57,767.39) allowed by the IRS to reduce the estate's

outstanding liability.

The net effect of these three adjustments was to

increase the estate's assessed liability by $977.65

($56,266.24 + $1,478 - $57,767.39). That figure was, as the

notice said, a "Balance Due" but only as the net result of

the three adjustments. The notice did not say that the

balance-due figure captured the estate's total tax liability.

One who looked only at the notice might think otherwise, but

any lawyer or estate executor who looked also at the

stipulation would understand how these figures fit together

and recognize the limited role of the notice. Indeed, only a

month before the estate had stipulated to a vastly larger

debt of $123,103.21 ($66,836.97 assessed but unpaid plus

$56,266.24 not yet assessed but conceded) and had apparently

made no payments since then.3

This brings us to request no. 12. This request was the

last one in Talley's first set of requests to admit, and it

followed 11 individual paragraphs that asked only that the

3In other words, as of October 29, 1984, the estate had
agreed that it owed $123,103.21. The IRS notice the next
month allowed a credit of only $57,767.39, so--quite apart
from any accrued interest or penalties--Talley should have
known that over $65,000 remained unpaid as of the date of the
notice.

-9-

government admit that the listed documents (in the first 11

request paragraphs) were "true copies" of what they purported

to be. No. 12 was worded somewhat differently:

Request No. 12

12. Admit that the payment of Nine Hundred
Seventy-seven ($977.65) Dollars and 65/100 by John
Talley concerning the Notice of Tax Due dated November
29, 1984 (Exhibit 1), constituted full payment of the
balance due on the estate of Percy Talley as set forth
in that notice.

This last request, whether deliberately or not, is an

invitation to confusion. First, it misstates by implication

the gist of the notice, leaving the impression (with the

words "full payment") that total tax liability was the

subject of the notice when in fact the notice did not reflect

the total balance due from the estate. Second, by ending

with the phrase "as set forth in that notice," the request

allows one reader to think that an admission would merely

concede that the estate had in fact paid the amount "set

forth in the notice" and another reader to think that it

would concede that the notice correctly stated the estate's

tax liability.

Of course, neither reading makes much sense. The first

reading of the request asks the government to admit a fact

that no one would dispute; the second, to admit a point that

the government could not ever intentionally concede, since--

apart from inaccuracy--it would give away the lawsuit. If

the government had bothered to read the request, presumably

-10-

it would have said in response that the payment of $977.65

did constitute "full payment" of the amount stated in the

notice but that the amount stated at the end of the notice

did not reflect--or even purport to reflect--the full tax

liability of the estate. Instead, the government let the

request go unanswered.4

In all events, we think that request no. 12, read

against the background of the October 1984 stipulation and

the November 1984 notice, cannot fairly be read as a request

by Talley that the government admit that the $977.65 payment

satisfied the actual total liability of the estate. To the

extent that the request is ambiguous, that ambiguity is to be

construed against Talley (whose lawyer drafted the request).

See Dixon v. Commissioner, 62 T.C.M. (C.C.H.) 1440, 1511

(1991). And to the extent that common sense is a guide to

construction, a reading that trivializes the request is

preferred to one that renders the request absurd. In short,

treating the government as bound by its admission of the

request, we believe it has admitted only what it has never

denied: that the $977.65 payment corresponded to the amount

set forth in the notice.

4When it got around to reading the request in June 1989,
the government then compounded the confusion by first reading
the request as Talley now urges (and telling the district
court that it would move to withdraw the admission) and then
reading the request merely to admit that the amount stated in
the request had been paid (making a withdrawal of the
admission unnecessary).

-11-

Since in our view the district court misconstrued

request no. 12, its judgment in favor of Talley--which rests

solely on the government's admission of request no. 12--

cannot stand. The scope of the remand is addressed at the

conclusion of this opinion. We do not reach the government's

alternative argument that, if the request were read in

Talley's favor, then the government should have been

permitted to withdraw its admission. Such an argument itself

raises troublesome questions that we readily leave for

another day.5

The other issue presented by the government on this

appeal is whether the district court erred when it refused to

permit the government belatedly to file a counterclaim. It

will be recalled that Talley sued the government to recover

the levies against the estate bank account amounting to about

$94,000. From the government's standpoint, not only did

Talley have no right to a refund but, in addition, the estate

still owed the government for unpaid taxes, penalties and

interest, which the levies had only partially recovered. It

is undisputed that the government's claim for any balance due

5For example, whether Talley's reliance on the admission
was unreasonable; whether Talley would suffer any "prejudice"
from a belated withdrawal in the technical sense specified by
Rule 36(b); and whether the government's motion to conform
the pleadings to the evidence could be construed as an
implied, conditional request to withdraw the admission.

-12-

is a compulsory counterclaim which, if not properly asserted

in this case, is lost forever. Fed. R. Civ. P. 13(a).

Under the rules, the government should have asserted its

counterclaim when answering Talley's complaint. Fed. R. Civ.

P. 13(a). Instead, it waited for over a year and a half to

do so, explaining that it had not asserted the claim in its

answer because it needed to await approval from the Secretary

of the Treasury. At the time its motion to amend the answer

was filed in June 1990, the case was then on the eve of

trial. The trial date was then postponed for several months,

from June to October, when the government proposed to call

Talley's counsel as a witness, but the district court

nevertheless ruled after the postponement that the motion for

leave to file the counterclaim came too late.

"It is incomprehensible," said the district court, "that

it took the government well over one year to obtain authority

from the Secretary of the Treasury . . . ." The court also

said that allowing the counterclaim at this point would

expose Talley "to significant prejudice at this stage of the

proceeding," as well as "to substantial inconvenience." The

district court did not explain the basis for any finding of

either prejudice or inconvenience. Talley's memorandum

opposing the motion to assert the counterclaim did make a

claim of prejudice; in somewhat veiled fashion, it suggested

that, if the estate had been timely advised of the

-13-

counterclaim, it would have summoned witnesses to show that

oral statements of an IRS representative in July 1988

conceded "that no liability remained with regard to this

estate."

How this issue--the district court's refusal to permit a

belated counterclaim--should be resolved in the ordinary case

is open to debate. On the one hand, the government's 18-

month delay in advancing its counterclaim is substantial and

its excuse lame; perhaps the Secretary had not approved the

counterclaim when the answer was due but that did not require

the government to wait for 18 months, until after discovery

was completed, to assert a counterclaim that was evident from

the outset. Trial judges, who have considerable discretion

in such matters, are understandably loath to entertain new

claims in June when trial is scheduled for July, when

discovery has been completed, and when the government has

little excuse for so long a delay in asserting its claim.

The government, on the other hand, reasonably argues

that its counterclaim motion was not resolved until after the

trial had been postponed until October, alleviating

inconvenience. More important, virtually the same evidence

the government would be expected to offer to refute Talley's

refund claim would, if the government's proof were valid,

also establish its own right to affirmative recovery.

Finally, the only "prejudice" from a withdrawal described by

-14-

Talley is not very persuasive: Talley's bare claim of an IRS

oral misstatement in 1988 would not, even if proved,

establish a conventional estoppel, no detriment of reliance

having been described; and even a conventional estoppel might

well not prevail against the government in a tax case.

Office of Personnel Management v. Richmond, 496 U.S. 414, 427

(1990) ("not a single [Supreme Court] case has upheld an

estoppelclaim against thegovernment forthe paymentof money").

We have concluded that in the somewhat unusual

circumstances of this case, we need not decide whether the

district court in July 1990 should have allowed the

counterclaim to be pleaded. Here, a reopening of the trial

record is warranted, in the interests of justice, based

solely upon our decision that the district court misread

request no. 12. Strictly speaking Talley could be held to

the proof he offered at trial, which was little beyond the

admission to request no. 12. But we think that the

government bears much of the responsibility for the

imbroglio, first by not responding to the request, and then

by offering inconsistent readings of it to the district

court. Thus, our remand will permit Talley to assert

whatever evidence he has or can develop in a reasonable time

-15-

to support his refund claim and to contest the government

computations on a basis other than request no. 12.6

By the same token, we think that in the interests of

justice, the government should be entitled to assert its

counterclaim. Whatever the situation may have been in July

1990, Talley now has ample time to adduce whatever facts may

be relevant to either the refund claim or the counterclaim--

and they are likely to be pretty much the same facts. There

is no surprise element now and the trial record must be

reopened in any event to permit Talley to support his refund

claim. Our outcome--allowing Talley to pursue his refund

claim and the government to pursue its counterclaim--appears

to us to be the most equitable way to shape the required

remand.

The judgment of the district court is vacated and the

case remanded for further proceedings in accordance with this

opinion.

6There is no reason why this opportunity should not
include reasonable additional discovery if Talley provides
the district court with a basis to think discovery might be
fruitful.

-16-