IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

GEORGE E. MACK and ANNA H. MACK,    )
                                    )
            Plaintiffs,             )    TC-MD 200339G
                                    )
       v.                           )
                                    )
DEPARTMENT OF REVENUE,              )
State of Oregon,                    )
                                    )
            Defendant.              )    **DECISION**

Plaintiffs appeal Defendant's adjustment of various Schedule C deductions claimed on their 2016 return. Plaintiffs were represented at trial by Kevin O'Connell, attorney at law, and Defendant was represented by its auditor, Joshua Lawson. Testifying were Plaintiff George E. Mack ("Mack") and Timothy Blixseth, a client of Mack's. Plaintiffs' Exhibits 1 to 14 and Defendant's Exhibits A to E were admitted.

## I. STATEMENT OF FACTS

Mack describes himself as a "businessman and CPA." A former accounting professor with an MBA, he was a founding partner of the accounting firm Mack Roberts. He provided accounting services at that firm for more than four decades, as well as business, tax, and estate planning advice. His particular focus was on clients with growing small businesses. By 2016, many of Mack's clients were wealthy.

One way that Mack adapted his practice to meet his clients' needs was by occasionally agreeing to be named as trustee of estate-planning clients' trusts. In particular, clients who had provided differently for different children often sought a trustee from outside the family. Although Mack charged his hourly rate to set up estate plans, he did not charge to be named as trustee so long as he was not performing additional work. When he was called on to administer

an estate after a client's death, he would charge the estate for his service as personal representative.

Mack sold his partnership equity in Mack Roberts in 2015 and left the firm altogether in 2016. The firm destroyed his emails and other documents that might have been helpful in substantiating his expense claims. In addition, Mack's secretary of 29 years has since been diagnosed with severe Alzheimer's disease and is unable to locate the receipts he gave to her.

A.    *Yellowstone Club Lawsuit*

One of Mack's clients is Timothy Blixseth, a real estate developer and timber expert. Mack has prepared Blixseth's taxes every year since 1990, and Blixseth's businesses have frequently retained Mack's firm for their various accounting needs. In 2006, Blixseth sought Mack's help reorganizing his finances in conjunction with a divorce. (Ex E at 4.) Mack retained an outside firm, which formed two new business entities and prepared two trusts for Blixseth. (*Id*.) Mack initially served as a co-trustee of the trusts and as a co-manager for one of the entities. (*Id*.) He was subsequently named as a defendant in a bankruptcy court lawsuit related to the transfer of money from a separate development project of Blixseth's ("Yellowstone Club") through the trusts to the entity Mack co-managed. (*Id*. at 3–4.) The Yellowstone Club litigation continued for several years.

Mack testified that at the time he sold his equity in Mack Roberts he accepted a part-time job as CFO of all Blixseth's businesses, for which he received a salary of "$750,000 per year." Mack sold his equity in 2015 and did not report any salary income for 2016, implying the job did not last into the next year. (*See* Ex 2 at 1.)

In 2016, Mack reached a settlement with the plaintiff in the Yellowstone Club litigation. (Ex 5.) According to the terms of the agreement, "Mack and/or his insurer" was to pay the

plaintiff $225,000.  (*Id*. at 1.)  Mack paid half of that sum, $112,500; the other half was paid by his insurer.  (Ex 4 at 1.)  Mack also paid his lawyers: his checks to Parsons Farnell & Grein totaled $30,000 in 2016.  (*Id*. at 2–3.)  He testified that the settlement and the insurance payment were the only matters that law firm worked on for him.

Plaintiffs claimed a $149,500 legal expense deduction for the Yellowstone Club settlement payment and related lawyers' fees.  (Ex 2 at 8.)

B.      *Trail Blazers Tickets*

Early in his career, Mack discovered he could effectively develop business relations through sporting events.  In his words, he "built up his clientele" playing golf.  Throughout the year at issue, Mack frequently attended Portland Trail Blazers basketball games with clients and potential clients.  The games provided opportunities for introducing his guests to one another and to business acquaintances in nearby seats, as well as an occasion for discussing business matters over meals or drinks before and after.  Mack's 2016 calendar contains annotations showing some of his guests at the various Blazers games; Mack produced a fair copy of the names on that calendar in preparation for trial.  (Ex 6; *cf*. Ex 12.)

Mack is a longtime Blazers season ticket holder, and in 2016 he shared four center court floor seats with a client of his, Bob Lanphere.  (Ex 11 at 1–2.)  At $570.40 per ticket, the total invoiced cost of Mack's 2016–17 floor seat season package was $100,390.40.  (*Id*. at 1.)  Besides the floor seats, Mack held six other season tickets and three parking spaces, with an invoiced 2016–17 cost of $660 per space and $149.60 per ticket, totaling $41,474.40.  (*Id*. at 2.)  Handwritten annotations suggest that for the 2015–16 season the floor seats cost $93,387.36 and the remaining seats and parking cost $39,996.00.  (*Id*. at 1–2.)  Mack's 2016 credit card statements show charges for tickets totaling $53,071.99.  (Ex 8 at 1–9.)

Lanphere's sister kept schedules showing who claimed the floor seat tickets for each season's games. (Ex 13 at 1–2.) Next to the date of each game on the schedules is an annotation indicating a name or names—usually, but not always, Mack's or Lanphere's—and a number of tickets. (*Id*.) Mack testified that he and Lanphere settled the cost of the tickets between themselves based on those schedules.

Plaintiffs claimed a $67,783 deduction for meals and entertainment. (Ex 2 at 7.)

C.      *Travel*

In 2016, Mack traveled frequently to the Greater Palm Springs area in California. (Ex 7 at 1.) Mack scheduled several meetings per day in Palm Desert; he testified that over 20 of his clients owned second homes in that area and that 30 more visited every year. One of those clients was Bob Lanphere, with whom Mack served as executor of his father's estate and co-trustee of the Lanphere Trust. (*Id*. at 1, 8.) In 2016, Mack reported $200,000 in income from management of that estate. (Ex 2 at 1, 70.)

At trial, Mack appeared remotely from Palm Desert after the court denied Plaintiffs' motion to continue the trial date. In support of that motion, Plaintiffs' counsel had declared that "the current trial date coincides with Oregon schools spring break and vacation with grandchildren is an issue." (O'Connell Decl, ¶ 5.)

Plaintiffs claimed expense deductions totaling $18,582 for travel, hotels, airport parking, car rentals, and cab fare. (Ex 2 at 8.)

D.      *Additional Expenses*

Mack leased a car from a client with an Infiniti dealership, and Plaintiffs claimed a deduction of $10,560 for 80 percent business use of the vehicle. (Ex 2 at 7, 79.) Plaintiffs submitted a copy of the lease and a billing summary from 2015. (Ex 10.) Plaintiffs claimed an

$8,600 deduction for wages paid to Mack's secretary as a consulting expense; canceled checks made out to her total $3,100. (Exs 2 at 8; 4 at 1–3.) Finally, Plaintiffs claimed a $272 deduction for "TriMet tax" and a $278 deduction for "city tax." (Ex 2 at 8.)

Defendant denied all the above expense deductions at audit for lack of documentation. Plaintiffs request that all of Defendant's adjustments be reversed; Defendant requests that its adjustments be upheld.

## II. ANALYSIS

The issue in this case is the deductibility of Plaintiffs' claimed 2016 business expenses. Subject to exceptions not pertinent here, Plaintiffs' Oregon taxable income is determined using the provisions of the Internal Revenue Code (IRC) for determining 2016 federal taxable income, as well as related federal Treasury regulations. *See* ORS 316.012(2); 316.022(6); 316.032(3); 316.048.[1] Plaintiffs seek affirmative relief and therefore must bear the burden of proof on all questions of fact. *See* ORS 305.427.

Business expenses are generally deductible under IRC section 162(a). Certain categories of business expenses must also meet heightened substantiation requirements found in IRC section 274. The court will first consider those expenses claimed by Plaintiff not subject to heightened substantiation under section 274, and then the expenses that are so subject.

A.  *Expenses not Subject to Heightened Substantiation*

Ordinary and necessary expenses incurred in the conduct of a trade or business are generally deductible, and taxpayers are responsible for maintaining the records needed to demonstrate the correct amount of tax. IRC § 162(a); OAR 150-314-0265(2)(a).[2]

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2015.

[2] Oregon Administrative Rules (OAR)

Where records are incomplete, but there is evidence that an expense has occurred, the court may estimate the amount of the expense if "the taxpayer has provided sufficient evidence for the court to make a reasoned approximation." *Scott v. Dept. of Rev.*, TC 5192, 2018 WL 1884627 at *5 (Or Tax Reg Div Apr 19, 2018); *Cohan v. Comm'r*, 39 F2d 540, 543–44 (2d Cir 1930); *Vanicek v. Comm'r*, 85 TC 731, 742–43 (1985). "If the court lacks a threshold amount of evidence, the court cannot simply guess at the amount of the expense[.]" *Scott*, 2018 WL 1884627 at *5.

### 1. Legal Expenses

Legal expenses incurred to defend against a claim can be ordinary and necessary, provided they are directly connected to the taxpayer's business activity. *See Kornhauser v. United States*, 276 US 145, 153, 48 S Ct 219, 72 L Ed 505 (1928) (holding attorney fees to defend lawsuit deductible under predecessor to section 162(a)).[3] A legal expense is directly connected to business activity if "the origin and character of the claim with respect to which [the] expense was incurred" concerns the taxpayer's business activity. *United States v. Gilmore*, 372 US 39, 49, 83 S Ct 623, 9 L Ed 2d 570 (1963) (holding defense against lawsuit threatening taxpayer's control of business was personal expense because claim originated in divorce proceeding). Deductible legal expenses may include not only attorney fees, but also payments to settle claims. *See*, *e.g.*, *Abbott v. Comm'r*, 38 BTA 1290, 1292 (1938) (allowing deduction for payment settling imminent lawsuit by trust beneficiaries because lawyer's business included "serving for pay as a trustee and an executor").

/ / /

---

[3] Legal expenses directly connected to nonbusiness profit-seeking activity are also deductible, under IRC section 212. *Bingham's Trust v. Comm'r*, 325 US 365, 373–74, 65 S Ct 1232, 89 L Ed 1670 (1945) (so holding under predecessor to section 212).

In determining what is a taxpayer's trade or business, the general rule is that "the taxpayer must be involved in the activity with continuity and regularity" and must have a primary purpose of seeking income or profit. *Commissioner v. Groetzinger*, 480 US 23, 35, 107 S Ct 980, 94 L Ed 2d 25 (1987). A professional taxpayer who devotes significant time to serving as a trustee or executor for many clients over multiple years is "beyond doubt" one whose regular business includes such activity. *See Abbott*, 38 BTA at 1291–92 (holding lawyer's business included such service where he had administered nine to eighteen estates or trusts each year for seven years, devoting half his time to that activity). On the other hand, bankers who "only occasionally" administer clients' estates and almost never receive fees do not include service as a fiduciary in their trade or business. *Tallman v. Comm'r*, 37 BTA 1060, 1063 (1938) (disallowing deduction for settling claim arising from taxpayer's service as trustee for relative because acting as trustee was not taxpayer's regular business and was not done for profit).

Mack was named as a defendant in the Yellowstone Club litigation because of his service as a co-trustee of Blixseth's trusts and a co-manager of Blixseth's business. On the evidence presented, it is probable that those activities were part of Mack's accounting and advising business. Although Mack did not charge specifically for being named as trustee, he did charge for setting up the entities, for modifying them, and for all other work he was called on to perform. Blixseth was a longstanding client of Mack's who brought a good deal of business to Mack's firm; allowing himself to be named as co-trustee and co-manager maintained Mack's business relationship with Blixseth and facilitated future work.[4] Mack's similar involvement in

---

[4] Furthermore, in a bankruptcy court decision on Mack's involvement in this matter, the court found evidence that Mack had been paid by another Blixseth entity "for doing work for everything." *In re Yellowstone Mountain Club, LLC*, 08-61570-11, 2014 WL 4976613 at *7 (Bankr D Mont Oct 3, 2014). Blixseth's subsequent hiring of Mack as CFO of all his companies is consistent with that possibility.

clients' estate plans—which generated $200,000 of income in the year at issue—shows the viability of that business plan. Legal expenses arising from the Yellowstone Club litigation were ordinary and necessary expenses of Mack's business.

At audit, Defendant denied Plaintiffs' legal expense deduction for lack of documentation. Here, Plaintiffs provided a canceled check and a settlement agreement substantiating the $112,500 settlement payment. Plaintiffs also provided canceled checks paid to their lawyers, but did not provide invoices. Although the court has no reason to doubt Mack's testimony that he only retained that law firm for this one matter, without invoices it is impossible to determine in what year the fees were incurred. The court has insufficient evidence on which to estimate allowable attorney fees and may not guess. *See Scott*, 2018 WL 1884627 at *5.

Plaintiffs' legal expense deduction is allowed to the extent of Mack's share of the settlement payment: $112,500.

2.      Consulting and tax expenses

Plaintiffs' remaining claimed expenses were for "consulting" (Mack's secretary's wages), TriMet tax, and city tax. Together with Mack's testimony, canceled checks to Mack's secretary substantiate $3,100 of consulting expenses. There is no other documentary evidence, and testimony did not provide ground for estimating any additional amounts paid.

Plaintiffs' consulting expense deduction is allowed in the amount of $3,100. The tax expense deductions are not allowed.

/ / /

/ / /

/ / /

/ / /

B.      *Expenses Subject to IRC section 274*

Entertainment expenses, travel expenses, gifts, and expenses respecting "listed property" (a category that includes passenger automobiles) were all subject to heightened substantiation requirements in 2016.  IRC §§ 274(d), 280F(d)(4).[5]

1.      Trail Blazers tickets

IRC section 274 imposes multiple additional requirements on entertainment expenses. Under section 274(a), entertainment expenses must relate more specifically to business activity than is generally required, while under section 274(d) such expenses must be supported under heightened substantiation.

An entertainment expense is deductible only if the taxpayer "establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business[.]"  IRC § 274(a)(1)(A).  Thus, an expense must satisfy one of two tests—it must be "directly related" to active business conduct, or at least "associated with" such conduct if it directly precedes or follows a bona fide business discussion.  Treas Reg § 1.274–2(a)(1); *St. Petersburg Bank & Tr. Co. v. U.S.*, 362 F Supp 674, 676–77 (MD Fla 1973), *aff'd*, 503 F2d 1402 (5th Cir 1974).

Meetings held at sporting events are presumptively not considered "directly related" to active conduct of a taxpayer's business because of the presence of substantial distractions.  Treas Reg § 1.274–2(c)(7).  To overcome that presumption, a taxpayer would need to establish that the expense met four criteria.  Treas Reg § 1.274–2(c)(3).  Those criteria include that a taxpayer

---

[5] The court cites to the version of IRC section 274 made effective December 19, 2014.  Subsequent amendments have materially provisions cited in this decision.

expected a more specific business benefit from the expenditure than the goodwill of the persons entertained and that the taxpayer actively engaged in a business discussion during the entertainment. Treas Reg § 1.274–2(c)(3)(i),(ii).

Entertainments directly preceding or following a "substantial bona fide business discussion" may be considered "associated with" a taxpayer's business, even if not directly related. *See* IRC § 274(a)(1)(A). To show that such a discussion occurred, taxpayers must establish they have "actively engaged in a business meeting" to obtain a "specific trade or business benefit." Treas Reg § 1.274–2(d)(3)(i). They must also show that "the principal character or aspect of the combined entertainment and business activity was the active conduct of business." Treas Reg § 1.274–2(d)(3)(i). The prototypical example is where business associates come from out of town for the purpose of holding a substantial business discussion and are entertained the night before. Treas Reg § 1.274–2(d)(3)(ii).

In this case, Mack's entertainment of business associates at Trail Blazers games was not "directly related" to active conduct of his business. There is no evidence that business discussions took place during the games, and only the vaguest testimony of discussions occurring before and after games. *See* Treas Reg § 1.274–2(c)(3)(ii). Mack's business objectives appear to have included introducing business associates to one another, courting potential clients, and maintaining relationships with current clients. As a primary purpose for the entertainments, none of those is more specifically related to generating income for Mack than building goodwill. *See* Treas Reg § 1.274–2(c)(3)(i).

Likewise, the evidence does not show that the Blazers games were "associated with" Mack's active business conduct. Without a clearer picture of the content of the business discussions, the evidence indicates that the primary character of the basketball outings was

recreational. *See* Treas Reg § 1.274–2(d)(3)(i). Unlike the example where a guest travels for the purpose of a business meeting and is incidentally entertained, here there is every indication that Mack's guests came for the purpose of enjoying floor seats at center court and incidentally talked a little business.

Given the state of the evidence, Plaintiffs have not shown that the Blazers ticket expenses were either "directly related to" or "associated with" Mack's active business conduct. Absent such a showing, no deduction for them can be allowed. *See* IRC § 274(a)(1).

2. Remaining expenses subject to heightened substantiation

No deduction for expenses for travel, entertainment, gifts, or use of "listed property" (including passenger automobiles) is permitted based only on the taxpayer's own statement. *See* IRC §§ 274(d), 280F(d)(4). A deduction is only allowed to taxpayers who can provide "adequate records" or other corroborating evidence sufficient to substantiate all four of the following elements: the amount of the expense; the time and place of the travel, entertainment, or use of the property; the business purpose of the expense; and the business relationship between the taxpayer and any persons entertained. IRC § 274(d).

In general, the "adequate records" requirement is met by a combination of both (1) a contemporaneous account book, diary, log, or similar record and (2) documentary evidence such as receipts or paid bills for lodging expenses while traveling and for each expense of $75 or more. Treas Regs §§ 1.274–5T(c)(2)(i), (ii); 1.274–5(c)(2)(iii). If adequate records are not available, taxpayers must first provide a written or oral statement "containing specific information in detail" as to each element. Treas Reg § 1.274–5T(c)(3)(i). Then, the taxpayer must provide "sufficient" corroborating evidence. *Id*. Direct evidence (such as witness

/ / /

statements) must be provided showing amounts, times, places, dates, and descriptions of gifts. *Id*. Circumstantial evidence is permitted to establish business relationship and purpose. *Id*.

Here, Plaintiffs claim deductions for meals and entertainment beyond the amount spent on Blazers tickets, for travel (including hotels, rentals and cabs, and parking), and for car expenses including lease of a passenger automobile. All those expenses are subject to heightened substantiation requirements. *See* IRC §§ 274(d), 280F(d)(4).

According to Mack's statement, at least some of the additional entertainment expenses occurred before and after the basketball games, which are recorded in Mack's diary. However, no specific information as to amounts and places of the expenses is apparent from any of the documentation, and Mack made only a general statement. Plaintiffs have not provided adequate records or sufficient other evidence to support their additional entertainment expense deduction.

The evidence of the car expenses is also slight, with no documents establishing the time, place, and proportion of business use of any vehicle. The evidence does not allow a deduction respecting the use of the leased automobile or other car expenses.

Regarding travel, Mack testified to his practice of traveling to Palm Desert, and his credit card statements show some airfare costs. Mack's diary allegedly records trips to Palm Desert, although Mack's handwriting presents interpretation problems. While Mack's testimony shows that he met with clients in Palm Desert, those clients were largely unnamed, and no evidence correlates specific expenditures with specific clients. Additional evidence suggests grandchildren were also present in that city. Given the state of the evidence, Plaintiffs have not established their entitlement to deduct travel expenses.

/ / /

/ / /

### III.  CONCLUSION

The evidence shows that Plaintiffs are entitled to deduct a portion of their previously disallowed legal and consulting expenses.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is granted in part. Defendant shall modify Plaintiffs' 2016 tax assessment to allow an additional $115,600 of Schedule C expenses.

_____

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*Some appeal deadlines were extended in response to the Covid-19 emergency. Additional information is available at https://www.courts.oregon.gov/courts/tax*

*This document was signed by Magistrate Poul F. Lundgren and entered on January 24, 2022.*